110 So.2d 654 (1959)
Ralph WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 29.613.
Supreme Court of Florida.
March 25, 1959.
Rehearing Denied May 4, 1959.
*655 Fred G. Minnis, St. Petersburg, for appellant.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for appellee.
THORNAL, Justice.
Appellant Ralph Williams, who was defendant below, seeks reversal of a judgment of conviction and sentence to death in the electric chair pursuant to a jury verdict finding him guilty of the crime of rape.
Several points for reversal are assigned but the principal question which challenges our detailed consideration is the alleged *656 error of the trial judge in the allowance of certain similar factual evidence which tended to establish a collateral crime.
On December 18, 1957, the 17-year old prosecutrix parked her family automobile on a parking lot known as "the second parking space" in the vicinity of Webb's City in St. Petersburg. She did some shopping and returned to her car between 9 and 9:30 p.m. She testified that after she had driven the car a short distance the appellant suddenly reached over from the back seat of the car and stabbed her in the chest with an ice pick. He next leaped over into the driver's seat. She stated that he then forced her to keep her head down on the front seat as he drove. The sum of the gruesome details, according to her testimony, was that appellant drove her around the City of St. Petersburg, threatening to kill her if she did not submit to his wishes. Consistent with the threats he criminally assaulted her sexually on two separate occasions. The testimony is that appellant finally stopped the car and departed. The prosecutrix reached her home in a hysterical condition around 11 p.m. She was taken to a hospital where medical examination confirmed the sexual assault as well as the severe ice pick wound in her chest.
Appellant, who testified in his own behalf, did not deny having had sexual relations with the prosecutrix. His sole defense was that his relationship with her was attained with her consent. He related in sum that he had made her acquaintance in July, 1957. He stated that from time to time he had had conversations with the prosecutrix; that he had a date with her the early part of December, 1957, and again on December 17, 1957, during all of which time, he testified, he was employed by Webb's City. During these prior dates, according to appellant's testimony, he had sexual relations with the prosecutrix with her consent. According to his version, the gruesome details of the fatal night related by the prosecutrix did not occur. He defends his position by testifying that he met the prosecutrix pursuant to prior arrangement and that his sexual relationships with her on that night were accomplished with her consent and without threat. The ice pick incident is explained away by his statement that he stopped the car suddenly while the prosecutrix had the ice pick in her hand threatening to do him harm in the event that he fulfilled a previously announced intention of severing his relationship with her.
The State completely devastated most of the defensive contentions offered by the appellant. It was established by representatives of Webb's City that he had not worked for that business since August of 1957. Williams had testified that he regularly met the prosecutrix at Webb's City while he was employed there during November and December of that year. On the particular occasions when he was supposed to have had prior dates with the prosecutrix in December, the testimony, without dispute, establishes that she could not have been where he said she was. The opinion of the doctor who examined her was unequivocal to the effect that the young woman had never had sexual relations prior to the night when the jury found that she was abused by the appellant. In the ultimate, the jury chose to believe the witnesses who testified for the State and rendered a verdict of guilty without a recommendation of mercy.
The trial judge entered a judgment of guilt. As required by law the supreme penalty was prescribed. Reversal of this judgment is now sought.
The appellant contends that error was committed in admitting into evidence a pocketbook of the prosecutrix found in his room, and in allowing testimony regarding the finding of the ice pick in the automobile of the prosecutrix. He further contends that the verdict and judgment are contrary to law in that Sections 794.01 and 919.23, Florida Statutes, F.S.A., authorizing trial juries to recommend mercy in rape cases are unconstitutional. He says that the evidence does not sustain the *657 verdict. His primary hope for reversal appears to be his contention that the trial judge committed error in permitting evidence of a separate instance revealing a similar factual situation involving the appellant and another.
The State, of course, contends that no error was committed by the trial judge in permitting the jury to receive the evidence to which appellant objects; that the statutes mentioned have already been sustained by this court, and that, in the ultimate, the evidence was abundantly adequate to sustain the verdict.
We find no merit whatsoever in the contention that error was committed in admitting evidence of the finding of the pocketbook and the ice pick. The pocketbook of the prosecutrix was found in the bedroom of the appellant several days after his arrest. Even though the witness who allegedly found the pocketbook was a supposedly incompetent landlady of the appellant, it appears from the record that there is no question whatever that the item was found on the premises occupied by Williams. It was certainly admissible to connect appellant with the crime and to establish the fact that he was in the company of the prosecutrix on the night in question. The objection to the testimony of the finding of the ice pick has even less merit. This item was found in the family automobile which the prosecutrix was driving on the night in question. She says he stabbed her with it. He said she was injured by accident. The instrument which both asserted produced the injury certainly was a proper item of evidence.
This appellant repeats a contention which has been examined by this court several times recently when he asserts the unconstitutionality of Sections 794.01 and 919.23, Florida Statutes, F.S.A., prescribing the penalty of death for the crime of rape unless a majority of the jury recommended mercy. He submits the view that since 1925, when the electric chair was authorized, juries in Florida have prescribed the death penalty for 33 Negroes in rape cases. He says that only one white man has been electrocuted for this crime during the same period. He doesn't point out the number who have been tried for the crime. Appellant's position simply is that, as applied by juries in this state, the statute produces a discrimination among those similarly conditioned and therefore a denial of equal protection of the law. We can add nothing to that which we have previously stated in Thomas v. State, Fla. 1957, 92 So.2d 621, and State ex rel. Copeland v. Mayo, Fla. 1956, 87 So.2d 501. The contention as to the alleged unconstitutionality of the cited statutes is once again found to be without merit.
We are finally confronted with a problem which has required more comprehensive analysis and research. It will be recalled that the prosecutrix testified that she left her automobile on the "second parking space" near Webb's City at about 7:30 p.m. on the night in question. To this we should add the testimony of a deputy sheriff who arrested the appellant the following day. He stated that Williams advised him on this occasion that when he saw the automobile he thought it was his brother's and crawled in the back to take a nap. At the time of his arrest, appellant did not relate to the officer his subsequent story of extensive sexual relations with the prosecutrix. He did this from the witness stand later and then denied having made the statement with reference to climbing in the back of the car under the erroneous impression that it was his brother's automobile. As a part of its case in chief, the State offered, and the trial judge allowed, the testimony of one Judy Baker, aged 16, and one Kirk, a law enforcement officer, regarding an incident which occurred on November 5, 1957, approximately six weeks prior to the attack on the prosecutrix. The testimony of these two witnesses simply was that on the earlier date Miss Baker had parked her car at approximately the same hour and on the same parking lot as did the prosecutrix on the night of December *658 18, 1957. Upon returning to her car sometime later with parcels purchased in Webb's City, Judy Baker opened the door and saw the head of a man on the floor in the back of the car. Fortunately for her she screamed and two auxiliary policemen came to the rescue. The occupant of the back of the car ran. Immediate pursuit resulted in the apprehension of the appellant Ralph Williams, who was identified as the occupant of the back of Miss Baker's automobile. He later testified at police headquarters that he had mistaken the car for his brother's automobile and had crawled into the back of it to take a nap. The Baker automobile was a black Plymouth of a model several years earlier than the green Buick which was driven by prosecutrix.
As pointed out above the trial judge permitted this testimony but at the time admonished the jury that it was to be taken as bearing upon the question of identity, intent, "the plan or design only" and was limited to that. The appellant takes the position that error was committed in admitting into evidence this testimony regarding the involvement of appellant in a similar factual situation which had occurred six weeks before the matter in issue but which had a tendency to reveal the commission of a collateral criminal act involving another person and unrelated by parties, facts, time or circumstances to the crime laid in the indictment. The sum of the position of the appellant on this point is that the evidence was totally irrelevant and that it tended to establish a collateral crime to the undue prejudice of the appellant in the minds of the jury.
The State takes the position that the evidence was relevant to identify the appellant, to show a plan or method of operation whereby this particular appellant created his opportunities for assaulting young white girls and finally tended to offset the anticipated defense of consent.
We could dispose of the problem by brief reference to a limited number of cases which appear to sustain what has been broadly described as "an exception" to an asserted rule which excludes collateral similar fact evidence that tends to point up the commission of a separate crime. However, we think we should not be content with such a cursory disposition of the problem. Our research and analysis of the historical development of the applicable rule of evidence suggest that considerable confusion has been the product of numerous divergent points of view. It is therefore appropriate, for the future guidance of the bar and the trial courts, that we analyze the rule and in the ultimate revive the original precedents so that in the future the correct rule of evidence may be applied in its proper setting.
Let us begin with a reminder that we here deal with so-called similar fact evidence which tends to reveal the commission of a collateral crime. Our initial premise is the general canon of evidence that any fact relevant to prove a fact in issue is admissible into evidence unless its admissibility is precluded by some specific rule of exclusion. Viewing the problem at hand from this perspective, we begin by thinking in terms of a rule of admissibility as contrasted to a rule of exclusion. With regard to similar fact evidence, illustrated by that in the case at bar, those who would exclude it invoke the principles of undue prejudice, collateral issues and immateriality. In so doing it appears to us that they disregard the basic principle of the admissibility of all relevant evidence having probative value in establishing a material issue.
The rule governing the admissibility of similar fact evidence finds its antecedents, of course, in many of the English cases. Prior to the middle of the Nineteenth Century, the English judges themselves engaged in numerous semantic gymnastics in an effort to simplify a rule of admissibility of this type of evidence. As a result of these early decisions, confusion followed until Regina v. Geering (1849) 18 L.J.M.C. 215, which established the general rule that similar fact evidence is admissible if relevant *659 to a fact in issue even though it also points to the commission of a separate crime. The rule is subject to the lone exception that such evidence is inadmissible if its sole relevancy is to establish a bad character on the part of the accused. The bad character exception to the rule of admissibility had been clearly announced in the early case of Rex v. Cole cited in Phillips, Law of Evidence (1st ed.) 69-70. The English rule as finally formulated in Regina v. Geering, supra, was subsequently reaffirmed and emphatically recognized by Makin v. Attorney General of New South Wales [1894] A.C. 57. The case last cited is generally recognized as the English judicial progenitor of the correctly stated rule. With regard to this type of evidence, therefore, the rule which has been followed in England for more than a hundred years is a broad rule of admissibility of all relevant evidence except as to character or propensity, and subject only to specific exclusions or exceptions which are few. In this form the English rule was transplanted in Florida during the latter part of the Nineteenth Century.
As we shall see, our own court started with the rule of admissibility so long as the evidence was relevant except for the purpose of degrading the character of the accused. However, as the cases multiplied and developed, we inclined toward announcing the rule in terms of exceptions to a broad rule of exclusion rather than in terms of a broad rule of admissibility. For example, it has been not uncommon for this court to state that collateral similar facts pointing to the commission of another crime are not admissible except to show motive or intent or design and the like. Our own cases over the past fifty years have tended to convert the original rule of admissibility into a rule of exclusion with innumerable exceptions. We thereby have allowed relevant evidence as an "exception" to a broad rule excluding all other evidence.
The result simply is that once again the exceptions have become the rule. In actuality we are merely applying the basic canon of relevancy in each particular case in order to determine whether certain specific evidence is or is not admissible. Otherwise stated, if the evidence appears to be relevant to a material fact in issue, we have customarily found an exception with which to clothe it with admissibility. On the other hand, if the collateral similar fact evidence lacks relevancy to a fact in issue, we have come to announce that such evidence is not admissible, there being no exception within which it could fall in order to make it relevant. The objectionable feature of this approach is that seemingly the fundamental principle of logical relevancy is abandoned. In its place is substituted a search for an exception under which the evidence becomes admissible, but which will be discovered only if out of the infinite variety of human activities a case has arisen in which some court has held it so.
Before making reference to a few of the more than fifty decisions of our own court dealing with this subject, we invite attention to two lucid articles prepared by Professor Julius Stone. They are, The Rule of Exclusion of Similar Fact Evidence: England, 46 Harv.L.Rev. 954, and, The Rule of Exclusion of Similar Fact Evidence: America, 51 Harv.L.Rev. 988.
Proceeding now to our own cases we suggest at the outset a reference to 13 Fla.Jur., Evidence, Sec. 140, p. 139. The correct rule is there reasonably well epitomized although stated somewhat in the negative. In the last cited authority it is announced that similar fact evidence regarding a party whose conduct is in question "is not competent to prove the commission of a particular act charged against him, unless connected in such a way as to indicate a relevancy beyond mere similarity in certain particulars." (Emphasis added.) This statement of the rule is entirely consistent with the position which we here take. Our view of the proper rule simply is that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. *660 The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.
The first trace of the rule under discussion to be found in the Florida cases is in Selph v. State, 1886, 22 Fla. 537, and in Mann v. State, 1886, 22 Fla. 600. In both of these cases certain evidence of collateral facts was held not admissible because of "irrelevancy". Mann v. State, supra, announced the rule that particular acts of commission of other crimes "in no way related to the one on trial" cannot be proved against a defendant. In addition, the opinion set the pattern for the position of this court to the effect that evidence of the bad character of a defendant is not admissible merely as a basis to raise a suggestion of his propensity to commit the crime charged. Mann v. State, supra, cited with apparent approval the decision of the Supreme Court of New Hampshire in State v. Lapage, 57 N.H. 245. Lapage has been cited, we think, more than any other opinion on this subject. The sum of the holding in Lapage is merely that the prosecution is not permitted to attack the character of an accused until he first creates the issue by offering evidence of good character. Likewise, the prosecution is not permitted to show the defendant's bad character by evidence of particular facts or evidence of a disposition toward the commission of the crime charged. However, according to Lapage, evidence of other crimes, and, we might add by inference, similar factual situations, are admissible against the accused if they are connected by circumstances with the crime in issue so that the proof of one fact, with its circumstances, has some bearing or relevancy upon the issue on trial, unless, of course, the only relevancy has to do with bad character or propensity.
In Roberson v. State, 40 Fla. 509, 24 So. 474, 476, this court proclaimed the established English rule as the governing rule in Florida. It was there stated in substance that evidence of a distinct crime "in no way connected by circumstances" with the crime in issue is inadmissible. However, it was further held that "proof of any fact with its circumstances, even though amounting to a separate crime, if it has some relevant bearing upon the issue being tried, is admissible in evidence." It will be seen that early in the history of the development of this rule in Florida, this court committed itself to the concept that all relevant evidence having probative value is admissible save to attack character even though it would have a tendency to suggest the commission of a separate crime. Killins v. State, 28 Fla. 313, 9 So. 711, and Langford v. State, 33 Fla. 233, 14 So. 815. Another often cited early decision is Wallace v. State, 41 Fla. 547, 26 So. 713, 718. Here again, citing as authority among other cases State v. Lapage and Makin v. Attorney General of New South Wales, supra, this court stated its position to be that proof of any fact with its circumstances even though amounting to a distinct crime is admissible if it has "some relevant bearing upon the issue being tried". Once more we find relevancy to be the test of admissibility. If the proffered evidence is relevant to a material fact in issue, it is admissible even though it points also to a separate crime.
We interpolate for caution that we do not overlook the rule that prohibits the admissibility of irrelevant or immaterial evidence that has no bearing on any of the material facts in issue. Conversely, we are holding that unless precluded by some specifically recognized exception, all relevant testimony is admissible. For example, in Wooldridge v. State, 49 Fla. 137, 38 So. 3, it was held that collateral evidence tending to establish a general scheme to defraud was admissible even though it tended to prove a distinct crime not laid in the information.
We next invite attention to Ryan v. State, 83 Fla. 610, 92 So. 571. Although the rule of admissibility is clearly stated in a fashion consistent with prior decisions, we begin in this decision to note the court beginning to describe the admissibility of the evidence in terms of relevancy for particular purposes "such as" motive, intent, identity, or a common scheme. A warning because of *661 potential prejudice is signaled. Nevertheless, the rule is consistently announced that whether the evidence tends to exculpate or convict, if it is relevant; that is, if it bears a certain relation to the crime charged to the extent that it is relevant to a fact in issue, such evidence is admissible. In Martin v. State, 86 Fla. 616, 98 So. 827, 829 we find another step in the statement of the rule in terms of recognized exceptions to a broad rule of exclusion. In Martin v. State, supra, it was stated that evidence of conviction of similar offenses is not admissible "unless such relation exists between them that proof of one tends to prove the other". This is merely a statement of the rule in converse. In actuality, it is nothing more than the traditional requirement of relevancy. Nickels v. State, 90 Fla. 659, 106 So. 479, 489, is one of the first of the significant decisions which undertakes to state the rule as a rule of exclusion with exceptions. In Nickels this court stated that generally it is harmful to admit evidence of collateral crimes "independent of and unconnected with" the crime charged. The decision then announces that "to this general rule" there are several distinct exceptions, among which are evidence which is a part of the res gestae or tends to establish identity, or when necessary to an intelligent account of the crime. All of the earlier cases are mentioned. Actually Nickels stands for nothing more than the historical rule that relevant evidence is admissible except when the sole relevancy is proof of bad character.
We think Suarez v. State, 95 Fla. 42, 115 So. 519, 526, rather clearly demonstrates the extent to which this court has gone in announcing exceptions to the so-called rule which excludes collateral evidence that tends to suggest the commission of an independent crime. Again, however, it should be noted that in Suarez the court took the position that evidence which tends to show that the accused has committed another crime "wholly independent" of the crime charged is "irrelevant and inadmissible." The court then proceeds to state what it describes as exceptions to this rule of exclusion. These exceptions include any evidence that will tend to prove criminal intent, guilty knowledge, purpose, plan or design or such as would tend to show that the act charged was not the result of accident, mistake or inadvertence or was aimed to prevent the defense otherwise opened to the accused. It appears to us that the opinion last cited rather adequately illustrates our preliminary observation to the effect that the broad comprehensive and almost all-inclusive exceptions to the so-called rule of exclusion have now in and of themselves once again become the rule. In other words, the rule of exclusion with innumerable exceptions has in effect become the broad rule of admissibility (because of the exceptions) subject only to the specific rules excluding the subject type of evidence in particular matters such as bad character or propensity.
Green v. State, 121 Fla. 307, 163 So. 712, 714, decided subsequent to Suarez v. State, supra, reverts to the original statement of the rule which simply was that evidence of a distinct crime "in no way connected by circumstances with the one" in issue is inadmissible. In the Green opinion, however, this court then proceeds to reaffirm its original position to the effect that "proof of any fact, with its circumstances, even though amounting to a distinct crime, if it has some relevant bearing upon the issue being tried, is admissible." We think no clearer statement of the broad rule of admissibility of this type of evidence can be found than that announced in Green v. State, supra, relying upon Suarez v. State, supra, and Roberson v. State, supra.
We interpolate at this point for coherence, therefore, that we sense no guilt of ignoring the rule of stare decisis when we submit herewith a conclusion that we stand on the broad rule which admits this type of evidence subject to specific exclusions instead of contributing to a continuance of a confusing statement of the rule in terms *662 of over-all exclusion subject to innumerable exceptions in favor of admissibility.
We come now to a prior decision which is perhaps the most strongly analogous to the instant case. In Talley v. State, 160 Fla. 593, 36 So.2d 201, the appellant was sentenced to the electric chair upon conviction of the crime of rape. The State was permitted to place before the jury the testimony of five women other than the victim. The sum of the testimony to which objection was made was that on three occasions prior to the date of the alleged crime and on two occasions subsequent thereto the accused had approached the other women in a manner very similar to his approach to the prosecutrix. He had in each instance inquired if the husbands were home. On at least two of the occasions he had made indecent proposals to the witnesses. In approving the admissibility of this testimony, this court held that even though evidence tending to reveal the commission of a separate and wholy independent offense was inadmissible, nevertheless, evidence revealing other crimes is admissible if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried. Again, we could be content to dispose of the instant case by simply making reference to our prior decision in Talley v. State, supra. However, our objective is not only to dispose of the case with a sound judgment but also to restate or perhaps to state more clearly and in simpler form this important rule of evidence which apparently has caused so much trouble in the past. As we did in Talley v. State, supra, we emphasize that the question of the relevancy of this type of evidence should be cautiously scrutinized before it is determined to be admissible. Nonetheless, relevancy is the test. If found to be relevant for any purpose save that of showing bad character or propensity, then it should be admitted.
As we reach the more recent cases we come to Winstead v. State, Fla. 1957, 91 So.2d 809. Appellant there relied on the rule that evidence of an independent crime is inadmissible. However, we again pointed out that evidence of other crimes is admissible or, as we would now state, is relevant if it tends to show a common scheme or plan. In Davis v. State, Fla. 1956, 87 So.2d 416, a case involving a conviction of breaking and entering, we approved the admissibility of evidence regarding the method of operation in accomplishing other burglaries on the ground that such testimony revealed a criminal course that the defendant was following and reflected a pattern of operation corresponding to that employed in the case then at bar. This was a clear case of similar fact evidence that was admissible to show plan, scheme or design even though it also suggested the commission of an independent crime. Further evidencing varied statements and applications of the rule see Hutchinson v. State, Fla.App. 1958, 102 So.2d 44; Dixon v. State, Fla.App. 1958, 104 So.2d 122; Gordon v. State, Fla. 1958, 104 So.2d 524; Savage v. State, Fla. 1948, 38 So.2d 47.
We have not overlooked the decisions in Lovely v. United States, 4 Cir., 169 F.2d 386, and Gluck v. State, Fla. 1952, 62 So.2d 71. A careful examination of the opinions in these cases fails to produce any conflict between our decision here and the conclusions reached in the cited cases. Gluck v. State, supra, was a good example of the application of the rule which we here announce. There it was held error to permit testimony regarding an offense allegedly committed three or four years prior to the offense charged. This was so because the prior offense was totally independent of the subsequent act and bore no relevancy to it whatsoever. In other words it had no probative value with relation to any material fact in issue. In holding such evidence inadmissible this court merely *663 adhered to the original rule of excluding irrelevant testimony.
Lovely v. United States, supra, is authority for the rule which we here announce that evidence which has a reasonable tendency to establish the crime laid in the indictment is not inadmissible merely because it points to another crime. The question to be decided is not whether the evidence tends to point to another crime but rather whether it is relevant to the crime charged.
At the risk of submitting an unduly burdensome opinion we have undertaken to point up many of our own precedents in order to support the conclusion which we herewith announce as well as to demonstrate the varied statements of this rule of evidence which has produced some difficulty in application. In the immediate case at bar we think the evidence regarding the Judy Baker incident was clearly admissible because it was relevant to several of the issues involved. It definitely had probative value to establish a plan, scheme or design. It was relevant to meet the anticipated defense of consent. At the time when it was offered in the presentation of the State's main case it had a substantial degree of relevance in order to identify the accused. Finally, it was relevant because it demonstrated a plan or pattern followed by the accused in committing the type of crime laid in the indictment.
In view of our analysis of the precedents and for the future guidance of the bench and bar, the rule which we have applied in affirming this conviction simply is that evidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion. This rule we hold applies to relevant similar fact evidence illustrated by that in the case at bar even though it points to the commission of another crime. The matter of relevancy should be carefully and cautiously considered by the trial judge. However, when found relevant within the limits of the stated rule, such evidence should be permitted to go to the jury.
We have thoroughly scrutinized the record and have carefully examined all of the evidence in accord with the requirements of Section 924.32, Florida Statutes, F.S.A., in order to determine whether the ends of justice require a new trial. Finding no error and finding as we do that the ends of justice do not demand a new trial, the judgment under attack is affirmed.
Affirmed.
TERRELL, C.J., and THOMAS, DREW and O'CONNELL, JJ., concur.