209 So.2d 468 (1968)
Ronald WINKFIELD, Appellant,
v.
STATE of Florida, Appellee.
No. 67-277.
District Court of Appeal of Florida. Second District.
April 26, 1968.
Joseph G. Spicola, Jr., Public Defender, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and William D. Roth, Asst. Atty. Gen., Lakeland, for appellee.
ALLEN, Judge.
On January 31, 1967, appellant was charged with the crime of robbery. Appellant entered a plea of not guilty and the case was heard before the court below with a jury on April 19, 1967. The jury found the appellant guilty as charged. A motion for new trial was denied by the court below.
The appellant bases this appeal on certain evidence admitted at the trial. The State Attorney put into evidence the commission of another alleged crime contending that it was relevant and gave probative value concerning a crime for which appellant was *469 being tried. The trial court admitted this evidence, to which appellant objected, under the rule as found in Williams v. State, Fla. 1959, 110 So.2d 654.
The evidence admitted was the testimony of Gilbert Martinez and Annie Mae Ousley. Their testimony centered around the commission of a crime on December 21, 1966, some thirty days subsequent to the crime for which appellant was charged. For a proper consideration of this testimony under the Williams rule it is necessary to set it out at length.
Gilbert Martinez testified as follows:
"Q. Now, referring back to the 21st day of December, 1966, did you have occasion to be at the Park [sic] Cut-Rate Liquor Store?
"A. Yes, sir.
"Q. At what time were you there?
"A. I was there about 3:00 to 3:30.
"* * *
"Q. Did anything unusual occur when you parked your truck in the back of the cut-rate liquor store?
"A. Well, after I finished my delivery, I opened the back door to the truck to put my hand truck in when I see two shadows coming behind me and I heard a voice say, `Freeze.' And I turned around and I saw a gun. So, then, another voice said, `Look in the other pocket.' And one of them relieved me of my truck driver's wallet and the other one relieved me of my personal wallet. Then 
"Q. Where did you have your wallets?
"A. I had one on each rear pocket.
"Q. Did you have any money in these wallets?
"A. I had $16.20 that belonged to the company in the truck driver's wallet."
Annie Mae Ousley testified as follows:
"Q. Where were you employed on the 21st day of December of 1966?
"A. Paul's Liquor Store, Paul's Cut-Rate Liquor Store and Restaurant.
"Q. Were you there at approximately 3:00, or 3:30 p.m.?
"A. I was.
"Q. Do you know Gilbert Martinez?
"A. I do.
"Q. Do you know where he was employed at that time?
"A. He was bringing whiskey to the store.
"Q. From where?
"A. He was, carried it in the package store.
"Q. Where did he get it from to carry it in?
"A. Out of the back of the truck. The truck was parked in the back of the building and he taken one load already in and he coming back to get another one. These two fellows attacked him in the back.
"Q. Two fellows did what?
"A. They came on each side of the truck and I seen them going on each side of the truck and I peeked over the window to see what they were doing. I couldn't see. I went to the back door to see good and they made me go back inside.
"Q. When you went to the back door, did you open the door?
"A. I did.
"Q. After you opened the door, did you step out?
"A. No, I didn't step out.
"Q. What occurred after you opened the door?
"A. After I opened the door, I seen a pistol, fellow told me to get back inside.
"Q. Someone told you to get back inside?

*470 "A. Yes.
"Q. Do you see that man here today?
"A. He is.
"Q. Will you point him out to the Court and the Jury?
"A. He is sitting over there (indicating).
"Q. That man over there?
"A. That's right.
"MR. CORCES: [Assistant State's Attorney] May we have the record reflect that the witness has identified the defendant, Ronald Winkfield."
As previously stated, this testimony was introduced by the State Attorney on the ground that the commission of another alleged crime was relevant and gave probative value concerning a crime for which appellant was being tried.
For the testimony to be relevant and of value it would have to be in relation to the evidence given concerning the crime committed in the instant case. To show this relationship it is necessary to set out portions of the testimony of the victim, Mr. Ernest Fernandez, and a witness, Mrs. Naomi Meade.
Ernest Fernandez testified as follows:
"Q. All right, sir. Now, when you were in your truck on the 10th day of November, 1966, at that locality, at about 4:00 p.m., did anything unusual occur?
"A. Yes, it did.
"Q. What occurred?
"A. I saw a couple of men coming up toward my truck. One got on one side of the truck and the other on the other. I glanced up as I were figuring the bill of this customer, when I, they passed me and one of them came back. I looked at him and he says, `Give me your money.'
"* * *
"A. They passed the side. My truck is a walk-in truck. I had both doors open. They slide. And, as I was figuring out, I noticed the shadow on one side and I turned to it and this man had a sawed-off shotgun and told me, `Give me your money. Give me your money.' So 
"Q. Where was this man at, with the sawed-off shotgun in relation 
"A. He was on the street.
"Q. In relation to where you were, seated in the truck?
"A. He was right on the right side of the truck.
"Q. He was on the right side of the truck?
"A. That's right. Looking in the door.
"Q. Where was the other man?
"A. What?
"Q. Where was the other man?
"A. The other man I hadn't seen until I told this man, I said, `You are kidding.' And he says, `We are not kidding.' So then, I felt somebody reaching into my hip pocket and took out my wallet. At that time 
"* * *
"Q. Let me ask you this, Mr. Fernandez. I want you to look around this courtroom and see if you can see one of the two men that you say held you up at that truck?
"A. Yes, sir. I have already seen him.
"Q. Will you point him out to the Court and Jury?
"A. That gentleman over there (indicating).
"Q. That gentleman sitting at the table there?
"A. That was the man with the shotgun.

*471 "MR. CORCES [Assistant State Attorney]: May we have the record reflect that the witness has identified the defendant, Ronald Winkfield.
"* * *
"Q. Now, as I understand your testimony, there was an alley in which you fired some shots at him?
"A. That's right.
"Q. Where was this alley located?
"A. This alley run east and west between Chipco and 27th Avenue.
"Q. I see. Did he have anything else with him besides a shotgun at the time that you saw him at this alley?
"A. He had a shotgun wrapped in a cardboard paper.
"Q. Did he do anything with this cardboard paper at the time?
"A. When he turned around to threaten me, he dropped it."
Naomi Meade then testified as follows:
"A. And after I went back in the house to get the second armload of laundry to come back outside on the porch, then the two, one was on one side of the truck and the other one with the shotgun held up at the driver's head.
"Q. One of them had a shotgun?
"A. Shotgun.
"Q. On which side of the truck was he?
"A. He was on the off side the truck, the other one that had the pistol was on the side of the truck with the driver.
"Q. The one with the shotgun was on the driver's side?
"A. No, the one 
"Q. I mean, on the passenger side?
"A. It was on the passenger side.
"Q. And was he facing you or did he have his back to you, or what?
"A. He had his back to me. The one with the shotgun had the back to me."
From a comparison of the testimony about the subsequent crime and the crime for which appellant was tried, we can see similarities in the operation and scheme of both crimes. We can also see a common identity of the defendant in both crimes.
The rule as found in Williams v. State, Fla. 1959, 110 So.2d 654, is stated:
"* * * that relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy."
This court was presented with basically the same question as presented in the instant case in Green v. State, Fla.App. 1966, 190 So.2d 42. The Williams rule was analyzed by Judge Pierce of this court and in his opinion the elements of the rule were set out to be:
"We analyze Williams to mean that evidence of other offenses is admissible if 
"  it is relevant and has probative value in proof of the instant case or some material fact or facts in issue in the instant case; and
 its sole purpose is not to show the bad character of the accused; and
 its sole purpose is not to show the propensity of the accused to commit the instant crime charged; and
 its admission is not precluded by some other specific exception or rule of exclusion."
From a full and thorough review of the whole record with emphasis on the testimony set out in this opinion, we can see that the evidence offered was relevant and did have probative value in proof of the instant case. We cannot agree with appellant's contention that the evidence was offered for the sole purpose of showing *472 the bad character of the accused. The record does not reflect anything to give merit to the appellant's contention.
We therefore affirm the ruling of the court below in admitting the testimony.
Affirmed.
LILES, C.J., and PIERCE, J., concur.