VAN NORTWICK, J.
Cameron A. Holmes appeals his conviction for manslaughter and carrying a concealed weapon. He raises six issues, five of which we affirm without discussion. We write to address his contention that the trial court erred in denying his motions in limine and allowing evidence that he was a drug dealer and that police found drugs in his room on the date of his arrest. We hold this evidence of his drug dealing was inextricably intertwined with evidence of the crime and, further, that it was relevant to explain his state of mind when he returned armed to the scene of an earlier altercation with the victim. Accordingly, we affirm.
On May 17, 2006, Ronald Rawlinson, an admitted crack user, met appellant at the end of Sue Lane, where Rawlinson lived, and negotiated the purchase of some cocaine. Rawlinson could not pay the full price for the cocaine, and appellant agreed to take a small sum, accepting Rawlinson’s promise that he would pay the remainder the next day. Appellant gave Rawlinson a piece of paper with the name T.Z. on it and two telephone numbers.
When Rawlinson did not call him the next day, appellant returned to Rawlin-son’s neighborhood. There was evidence that he was looking in the windows of the home belonging to Joe Lloyd, the victim. Lloyd confronted appellant, pushed him, and told him to get out of the neighborhood while picking up appellant’s bicycle and throwing it. Matt Arnold, a neighbor, heard appellant tell Lloyd, “I’ll be back with my boys.” Rawlinson watched the encounter from his window, but did not come out and admit his involvement with appellant. Lloyd called the police. Approximately 15 minutes later, appellant returned on foot. Lloyd, Arnold, and Raw-linson were standing together in Lloyd’s driveway. Arnold testified that appellant asked Lloyd, “Why did you put your hands on me?”
Words were exchanged between Lloyd and appellant, with Lloyd being loud and aggressive. Lloyd told appellant that the police had arrived. When appellant turned his head, Lloyd wrapped his arms around appellant and appellant began to backpedal. They traveled approximately 30 feet. Appellant lost his footing and he and Lloyd fell into the bushes. Arnold turned to Rawlinson to inquire if they should intervene. He did not witness the actual shooting. The accounts of Lloyd, Rawlinson, and appellant differ about what happened next.
Arnold testified that Lloyd did not have any weapons and, when he tackled appellant, Lloyd did not punch him. He described Lloyd’s move toward appellant as a “football tackle.” He heard Rawlinson say that appellant had a gun and he looked at Rawlinson at that point and missed the actual shooting. He saw appellant slide out from under Lloyd, turn around like he was putting something in his back pocket, and run off.
Rawlinson testified that appellant was not underneath Lloyd, but was halfway up and shot Lloyd as he was in the process of standing up. He said appellant “reached around for his back pocket and shot the gun off, just that quick” and then “he trotted off.” Lloyd was shot at pointblank range with the bullet entering near the top of the head and traveling front to back and downward. Both men testified the shooter had short dreadlocks. Both men testified Lloyd had not taken any action that posed a threat of death to appellant.
*861 A neighbor heard the gunshot and saw appellant jogging down the lane. His right hand was behind his back where she could not see it. He got within five feet of her and she got a good look at him. There was no blood on his clothes. She described appellant as “calm.” He got on his bicycle which was concealed under a bush and rode off. The gun was never recovered.[1]
Although not immediately forthcoming, Rawlinson told the police that evening that “the same person that he observed shoot the victim was the same person that he had bought drugs from previously.” Raw-linson placed two controlled calls to appellant. He identified appellant and someone else from a photo spread on May 31, 2006. Several months later, he picked appellant’s picture from a photo spread.
Appellant was interviewed June 1 and, though admitting he had been a drug dealer in the past, repeatedly denied his involvement in this shooting. However, appellant’s cell phone records placed him in the vicinity of the shooting on May 18 and were inconsistent with his explanation of where he was at the time of the shooting.
Appellant was arrested at an apartment approximately one-half mile from Sue Lane. When police arrested appellant, they found a bicycle, packaged substances they believed to be cocaine, bullets, cell phones, and a holster, but no gun. Appellant’s driver’s license which was recovered showed closely cut hair. Appellant was charged with second degree murder and carrying a concealed firearm.
For the next four years, appellant maintained his innocence, claimed an alibi, and wrote several letters to the judge and one to the state attorney, denying his involvement and claiming he did not meet the description of the shooter. He filed a petition in the Florida Supreme Court claiming that police had arrested the wrong person. On the eve of trial, he switched strategies and claimed self defense. He filed two motions in limine seeking to exclude the evidence of the alleged cocaine found in a drawer when he was arrested and evidence that he sold drugs at any point, particularly to state witness Rawlinson, or that he was attempting to collect a drug debt when the shooting occurred.
The trial court agreed with the State’s argument that evidence of the alleged cocaine which was found when appellant was arrested, a few weeks after appellant claimed to have ceased his drug activity in his police interview, would be a factor which the jury could weigh in determining appellant’s credibility. Further, the court ruled the other drug evidence was inextricably intertwined with the evidence of the crime and the credibility of the State’s principal witness Rawlinson.
At the subsequent trial, before the jury heard the police interview of the appellant and before the detective testified about the powdered substance which was found in appellant’s drawer, the jury was instructed that appellant was not on trial for selling drugs and that the evidence of drug dealing should have no place in their deliberations but should “be considered by you for the limited purpose of proving either motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident on the part of the defendant and [you] should consider it only as it relates to those issues.”[2]
*862 Appellant testified in his defense that he went to Sue Lane to obtain the money he was owed. He testified that, though he had a gun in his front pocket, he did not use it in the first encounter because his life was not in danger and he could leave. When he returned the second time to collect his money, Lloyd tackled him into the bushes and he could not breathe or get him off. He said: “I tried to get his arms from around me but he was too strong and I pulled out the gun and shot him.” On cross-examination, he added that Lloyd tried to choke him. He admitted that he had denied any involvement in this shooting to family and friends and law enforcement for over four years. He acknowledged that his defense that he shot in self defense “depends completely on [his] word about ... what’s going through [his] mind.”
This case came down to the credibility of two people: Ronald Rawlinson and appellant. Defense counsel argued that appellant, who was only 17, was faced with an older man who outweighed him by seventy-five pounds, who had been drinking (Lloyd had a blood alcohol level of .11), and who attacked him and tried to choke him. Only then did appellant shoot in self defense. Defense counsel argued that Raw-linson could not be believed because he was a drug user and was not initially forthcoming with the police about his part in this incident.
The State countered that, although appellant may have been young, he was a streetwise drug dealer, who brought a gun to a shoving match because he had been disrespected by Lloyd. The testimony concerning appellant’s actions as a drug dealer, which comprises only a few pages in a nearly 700 page transcript, was elicited to prove that as a drug dealer, appellant would be armed, would expect payment when he fronted drugs, and would not tolerate being disrespected in front of his customers. Defense counsel did not object and did not argue that the relevance of this testimony was outweighed by its prejudicial effect. The State argued that it was only after the considerable damaging evidence was elicited that appellant switched his strategy from arguing innocence to arguing self defense.
“A trial court has wide discretion concerning the admissibility of evidence, and a ruling on admissibility will not be disturbed unless there has been an abuse of discretion.” Irving v. State, 627 So.2d 92, 94 (Fla. 3d DCA 1993). Evidence of other crimes, wrongs or bad acts is admissible if it is relevant and probative of a material issue and not used for the purpose of demonstrating bad character or propensity. Williams v. State, 110 So.2d 654, 662 (Fla.1959).
Typically, there are three reasons for admitting inextricably intertwined collateral crime evidence: (1) it is necessary to establish the entire context out of which the charged crimes arose; (2) it is necessary to provide an intelligent account of the crimes charged; and (3) it is necessary to adequately describe the events leading up to the crimes. State v. Rambaran, 975 So.2d 519, 524 (Fla. 3d DCA 2008). “[T]o prove its case, the State is entitled to present evidence which paints an accurate picture of the events surrounding the crimes charged.” Griffin v. State, *863 639 So.2d 966, 970 (Fla.1994). As explained more fully in Griffin:
Thus, evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because “it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.”
Id. at 968. (Citations omitted). In short, “[inseparable crime evidence is admitted not under 90.404(2)(a) as similar fact evidence but under section 90.402 because it is relevant.” Hunter v. State, 660 So.2d 244, 251 (Fla.1995). However, section 90.408, Florida Statutes (2010) requires exclusion of relevant evidence “if its probative value is substantially outweighed by the danger of unfair prejudice....” (Emphasis added).
The evidence which appellant sought to exclude “showed a continuing chain of chronological events,” Foster v. State, 679 So.2d 747, 753 (Fla.1996), without which “an intelligent account of the criminal episode could not have been given,” Austin v. State, 500 So.2d 262, 265 (Fla. 1st DCA 1986), and was necessary for the State to be able to show appellant’s state of mind when he returned a second time to collect his drug debt. Specifically, it was the State’s theory of the case that, after Lloyd disrespected appellant when he came to collect his drug debt, appellant went to his home, got his gun, and returned to the scene to settle his argument with Lloyd. Although this evidence was prejudicial to appellant, “almost all evidence introduced by the State in a criminal prosecution is prejudicial to the defense.” Griffin, 639 So.2d at 970. Appellant’s credibility was at the heart of this case and it would have prevented the State from fairly and adequately making its case against appellant if the drug evidence was excluded. The State did not argue that appellant should be convicted because he was a drug dealer, but rather that his credibility was undermined by his many lies and his version of the shooting should not be believed by the jury.
AFFIRMED.
DAVIS, J., concurs and CLARK, J., dissents with written opinion.

. Appellant admitted at trial that he threw the gun, a 357 magnum, into the dumpster at his apartment.

. This charge was given again before the jury retired to deliberate. The trial court recognized that the drug evidence was not so-called Williams rule evidence, Williams v. State, 110 *862 So.2d 654 (FIa.1959), which is limited to "similar fact evidence" under section 90.404(2)(a), but was instead relevant evidence admissible under section 90.402, as explained infra at pages 8-9. The court stated that it gave the Williams rule instruction, however, to caution the jury that evidence of appellant's drug dealing should not be used for an impermissible purpose.