522 So.2d 869 (1987)
Aundra T. ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 86-507.
District Court of Appeal of Florida, Second District.
December 30, 1987.
James Marion Moorman, Public Defender, and Kevin Briggs, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Katherine V. Blanco, Asst. Atty. Gen., Tampa, for appellee.
RYDER, Judge.
In the early morning hours of July 13, 1984, N.L. was awakened by a man in her bedroom. He threw her to the floor and forced her to have sexual intercourse with *870 him. After the assault, he took her to the back door to let him out of her house. Because the house was dark, N.L. could not identify her assailant.
When the police arrived they discovered that the man had apparently entered N.L.'s home through her bedroom window. The police found that N.L.'s bedroom window screen had been cut. They found a knife on her dresser. The police also found a single fingerprint on the windowsill. An expert identified the fingerprint as appellant's fingerprint.
N.L. testified that several days before the attack, a man had come to her house seeking lawn work. Approximately one year after the assault, she identified appellant from a photographic lineup as the man who had requested the work. At trial, she was unable to identify appellant as the man seeking lawn work.
Approximately one year after the N.L. incident, D.K. was attacked while she was in her office apartment located in a commercial building roughly six blocks from N.L.'s home. On the night of the assault, D.K. heard someone near her back door. She yelled out that she would call the police. D.K. ran out of her apartment through another door and to an arcade in front of the building. Following her, the assailant caught her and partially stuffed a shirt into her mouth, forced D.K. to the ground and attempted to have sexual intercourse with her. Failing at this attempt, he dragged D.K. back into her building. In the fully lit apartment, the assailant had sexual intercourse with D.K. After the attack, the man turned the house lights on and off in a "peculiar manner" while examining the objects in the room. The assailant was in D.K.'s apartment approximately two hours. D.K. identified appellant as her assailant.
Appellant was charged with both the N.L. and the D.K. attacks. He was tried first for the N.L. incident. At the N.L. trial, the state sought to introduce the allegedly similar fact evidence from the D.K. case. Appellant's counsel objected to the use of evidence from the D.K. case. The court denied appellant's counsel's objection and allowed the D.K. evidence to be heard. Appellant was convicted and sentenced for burglary of a structure and sexual battery with threat or force.
Appellant raises three points on appeal. First, appellant contends that the trial court committed reversible error in admitting evidence of a collateral crime, the D.K. incident, when the facts of the collateral crime were dissimilar from the facts in the instant case. Second, appellant contends that the state improperly withheld the results of exculpatory lab reports despite the appellant's request for those reports. Third, appellant contends that the trial court erred in not providing a full inquiry into the state's alleged discovery violation. We address each in point of order.
"Similar fact evidence of other crimes, wrongs or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity." § 90.404, Fla. Stat. (1983); Williams v. State, 110 So.2d 654 (Fla. 1959). "A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations." Drake v. State, 400 So.2d 1217, 1219 (Fla. 1981). "Given sufficient similarities, the point of similarity must have some special character or be so unusual so as to point to the defendant." Id.
The trial court improperly admitted the evidence from the D.K. case. The N.L. and D.K. cases contained some similarities: the crimes were committed within the same year; within the same geographical location; at the same time of night; and on elderly victims. The modus operandi, however, differed significantly.
In the N.L. case, the perpetrator broke into her home by cutting through her bedroom window screen. He threw her to the floor and forced her to have sexual intercourse with him in a darkened room. He then pulled her off the floor and forced her to let him out the back way.
*871 In the D.K. case, the perpetrator attacked D.K. outside in the front of her home. He forced her to the ground and unsuccessfully attempted to have sexual intercourse with her. He dragged her back into the building into a fully lit room and had sexual intercourse with her. After the attack, he turned the lights on and off in a "peculiar manner" and examined objects in her apartment. His attack on D.K. lasted approximately two hours.
The Williams Rule violation was not harmless error. The standard by which we determine harmless error is whether after an examination of the entire record on appeal, "including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence ... there is a reasonable possibility that the error affected the verdict." DiGuilio v. State, 491 So.2d 1129, 1135, 1139 (Fla. 1986). "If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful." Id. at 1139. In the instant case, appellant's conviction hinged upon the collateral crime evidence. N.L. could not identify her assailant. The state's evidence consisted of a single fingerprint and the D.K. collateral crime evidence. Accordingly, we must reverse appellant's convictions and sentences for burglary of a structure and sexual battery with threat or force.
The appellant's second point on appeal is that the state improperly withheld the results of exculpatory lab reports. We agree. Florida Rule of Criminal Procedure 3.220(a)(1)(x) provides that
(1) After the filing of the indictment or information, within fifteen days after written demand by the defendant, the prosecutor shall disclose to defense counsel and permit him to inspect, copy, test and photograph, the following information and material within the State's possession or control:
(x) Reports or statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons.
"Just as there is no distinction between different prosecutorial offices within the executive branch of the U.S. Government for purposes of a Brady[1] violation, there is no distinction between corresponding departments of the executive branch of Florida's government for the same purpose." Antone v. State, 355 So.2d 777 (Fla. 1978). Appellant's counsel specifically requested the results of any scientific tests upon the N.L. evidence. Up to the very time of trial, the state maintained that no scientific tests had been completed on evidence obtained on the N.L. and D.K. cases. However, the Sanford Regional Crime Laboratory, a component of Florida's executive branch, had completed such tests prior to the N.L. trial. The state did not disclose the lab results until after appellant's conviction in the N.L. case. The state disclosed the results for purposes of the D.K. trial. While the reports were of debatable exculpatory value, appellant should have had the benefit of the information contained within them.
Appellant's third point on appeal is that the trial court erred when it failed to hold a Richardson hearing on the Brady violation. Richardson v. State, 246 So.2d 771 (Fla. 1971). We agree. If the state fails to discharge its duty by providing defense counsel with information on discovery and the failure is brought to the trial court's attention, the trial court must "inquire into the circumstances of the discovery violation and its possible prejudice to the defendant." Smith v. State, 500 So.2d 125 (Fla. 1986). The trial court failed to hold such a hearing in the instant case. The trial court's cursory review of the alleged Brady violation at the hearing on the motion for a new trial was insufficient.
Appellant's convictions and sentences for burglary of a structure and sexual battery with threat or force are reversed and vacated. The matter is remanded for a new trial consistent with this opinion.
*872 Reversed and remanded for proceedings consistent with this opinion.
SCHEB, A.C.J., and THREADGILL, J., concur.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).