525 So.2d 957 (1988)
Leif TOLLEFSON, Appellant,
v.
STATE of Florida, Appellee.
No. BS-381.
District Court of Appeal of Florida, First District.
May 11, 1988.
Rehearing Denied June 2, 1988.
*958 Michael E. Allen, Public Defender, and Carl S. McGinnes, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Defendant appeals his convictions and sentences for manslaughter by culpable negligence, DUI-manslaughter, leaving the *959 scene of an accident involving death, DUI-property damage, leaving the scene of an accident involving property damage and resisting an officer with violence. He raises five issues on appeal, all of which merit discussion.
The facts of the case are undisputed. Appellant moved to Albany, Georgia, from Honolulu, Hawaii, in February of 1986. On May 10, 1986, appellant rented a car and drove to Panama City, Florida. At dinner that night, appellant drank a Margarita and then proceeded to a local bar where he estimated that he had five beers and five shots of whiskey. As appellant was leaving the bar in his rented Monte Carlo, his vehicle struck an automobile in the parking lot. Appellant did not stop but proceeded down a road and piloted the Monte Carlo into another vehicle. After hitting the second vehicle, appellant's vehicle veered off the road and hit and killed a pedestrian. Appellant continued until he reached the closed gate of a state park. Two brothers observed appellant ram the park gate with his car in an apparent effort to gain access to the park. While ramming the gate, the Monte Carlo got stuck in the sand. Appellant then started a fight with the two brothers who had initially offered assistance. Appellant bit one of the brothers several times and screamed obscenities at them.
When a police officer with a dog arrived on the scene, appellant threatened the officer and ran toward him. Appellant began fighting with the police dog but was eventually subdued. Appellant was taken, kicking and screaming, to the scene of his collision with the pedestrian. Appellant was transferred from the police car to an ambulance so that he could be taken to the hospital for treatment of injuries inflicted by the dog. He was placed on a stretcher with restraints. Appellant cursed repeatedly and spit saliva and blood on the paramedic and the interior of the ambulance. Appellant loudly threatened to file suit against the police officers he encountered. He cursed everyone and spit saliva and blood. His blood alcohol level was shown to be at least .21. Appellant states that he has no memory of events which occurred after he left the bar.
At appellant's trial, Dr. Clell Warriner, an expert in clinical psychology, testified that he examined appellant. He administered the Minnesota Multi-Phasic Personality Inventory and testified that appellant scored within normal limits in all categories. Dr. Warriner also administered the Rorschach Ink Blot Test and testified that appellant often gave unexpected or unusual answers. Dr. Warriner concluded that although appellant is ordinarily able to act as a responsible citizen without exhibiting wildness or bizarre behavior, he has the potential to act or be psychotic. Based upon his tests, interviews, and other information supplied to him concerning the facts of the case, Dr. Warriner expressed the opinion that he found no reason to believe appellant was not in the midst of an acute psychotic episode during the time the events in question took place, most likely triggered by a perceived threat.
Dr. Lawrence V. Annis, a clinical psychologist, also interviewed appellant and administered several psychological tests to him. After reviewing the results of the tests and other materials such as depositions, Dr. Annis expressed the opinion that although appellant was intoxicated, appellant was sane at the time of the offense. Dr. Harry A. McLarin, a clinical psychologist, also examined appellant and administered certain tests to him. Dr. McLarin concluded that appellant was sane at the time the offenses were committed. Both Dr. Annis and Dr. McLarin testified that the Rorschach Ink Blot Test, which was administered by Dr. Warriner and relied upon by him in his assessment of insanity, was an inadequate diagnostic tool for diagnosing insanity.
During the trial, the State moved to present evidence of a collateral offense which occurred nearly a month before the present offense, on April 12, 1986. On that date, appellant was arrested in Georgia for DUI. He was taken to the police station and given a breathalyzer test which revealed a blood alcohol level of .11. Although appellant was not violent at the *960 time of his Georgia arrest, he was outspoken and belligerent and threatened to sue the police. The arresting officer testified that many people threaten to sue the police and that such comments were not unusual. The trial court admitted the evidence over defense counsel's objections.
At the conclusion of the trial, the court instructed the jury that the defense of insanity was not applicable to Count II, DUI-manslaughter, and to Counts IV and V, DUI-property damage. After deliberation, the jury returned verdicts finding appellant guilty of manslaughter by culpable negligence (a lesser included offense of the second-degree murder charged in Count I), DUI-manslaughter, leaving the scene of an accident involving death, DUI-property damage, leaving the scene of an accident involving property damage and resisting an officer with violence.
At sentencing, the trial court overruled several objections made by defense counsel concerning the sentencing guidelines scoresheet. Appellant was adjudged guilty of all charges and was sentenced to 12 years in prison, to be followed by 9 years of probation.
Appellant raises the following issues on appeal: (1) whether the trial court erred in admitting evidence of appellant's prior DUI arrest, (2) whether the trial court erred in instructing the jury that the defense of insanity was not applicable to the offenses of DUI-manslaughter and DUI-property damage, (3) whether the trial court erred in entering a written judgment adjudicating appellant guilty of DUI-manslaughter, (4) whether the trial court erred in approving a sentencing guidelines scoresheet recommending a sentence of 7-12 years imprisonment, and (5) whether the trial court erred in imposing three-year probationary terms for misdemeanor Counts IV and V, DUI-property damage, and misdemeanor Count VI, leaving the scene of an accident involving property damage.
Evidence of collateral crimes or acts committed by a defendant is inadmissible if its sole relevancy is to establish the defendant's bad character or the defendant's propensity to commit the crime. Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Evidence of other crimes or acts is admissible, however,
"if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried."
Id. at 662. See Section 90.404(2)(a), Fla. Stat. (1987). In order to be admissible, the collateral evidence must be relevant to a material fact in issue. Heuring v. State, 513 So.2d 122, 124 (Fla. 1987).
In the instant matter, although the prosecution submits that proof of appellant's Georgia DUI is relevant to show lack of mistake, modus operandi and course of conduct, these "labels" are advanced without any connection to the facts of appellant's case. At trial, the prosecution advanced the theory that proof of appellant's Georgia DUI arrest would serve to rebut appellant's claim of insanity. Specifically, the State argued that appellant's remarks to the Georgia police that he would sue them are similar enough to his remarks to the Florida police to invalidate appellant's claim of insanity. However, statements made one month prior to appellant's charged offense would not rebut the theory that appellant was legally insane at the time the charged offenses occurred, since the nature of appellant's alleged insanity was that it was fleeting in duration. Furthermore, the differences between appellant's charged crimes and appellant's prior Georgia DUI offense overshadow the singular similarity between the two incidents.
In conclusion, the prosecution has failed to show that admission of the collateral crime was relevant to prove any material fact in issue. Because the State failed to advance any legal basis for the admission of testimony concerning appellant's prior Georgia DUI, it was error for the trial court to admit the testimony. Lee v. State, 508 So.2d 1300 (Fla. 1st DCA 1987).
*961 However, because we find that the erroneous admission of appellant's prior Georgia DUI was harmless error, we decline to reverse on this issue. The standard by which an appellate court determines harmless error is whether, after an examination of the entire record on appeal, "there is a reasonable possibility that the error affected the verdict." DiGuilio v. State, 491 So.2d 1129, 1139 (Fla. 1986). The application of the harmless error test requires "a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." Id. at 1135.
The appellate court is obligated to examine the record and make a determination as to whether the erroneous admission of collateral crime evidence is harmless. Lee, 508 So.2d at 1302-03. In DiGuilio, the court determined that the evidentiary error was not harmless because the legally permissible evidence brought forth during the trial was not clearly conclusive of the defendant's guilt. 491 So.2d at 1138. In Robinson v. State, 522 So.2d 869, 871 (Fla. 2d DCA 1987), the appellate court also decided that the Williams Rule violation was not harmless error because the defendant's conviction hinged upon the collateral crime evidence. In Lee v. State, although the court stated that it was convinced that the evidence of appellant's guilt was overwhelming, if not conclusive, the court could not state that the Williams Rule error was harmless under the DiGuilio test because it could not "say that the error did not affect the jury's deliberations and influence its verdict." 508 So.2d at 1304. In Lee, the state attorney made repeated references to the erroneously admitted collateral crime in his closing argument to the jury.
Turning to the instant matter, it is undisputed that appellant committed the acts he was charged with. The sole issue in this case is whether or not the appellant was legally insane at the time the crimes were committed. Although the admission of appellant's prior Georgia DUI arrest is in violation of the Williams Rule, the evidence was only "harmful" in the sense that it acted as additional evidence that appellant committed the crimes he was charged with. However, appellant does not contest that the acts were committed. He only contests his sanity during the time period in question. As stated earlier, the facts surrounding appellant's Georgia DUI arrest do not in any way rebut appellant's insanity defense. Unlike DiGuilio and Robinson, the legally permissible evidence brought forth during the trial was clearly conclusive of appellant's guilt. Additionally, unlike the factual situation in Lee, no connection between appellant's. Georgia DUI arrest and the charged offense was advanced by the State either during direct examination or closing arguments. In conclusion, based on a review of the record, it is clear that there is no reasonable possibility that the Williams Rule violation affected the verdict in this case.
We also find that the trial court's failure to instruct the jury that the defense of insanity was applicable to the offenses of DUI-manslaughter and DUI-property damage was harmless error. The offense of DUI-manslaughter is considered to be a strict liability crime because the State need not prove negligence on the part of the defendant nor a causal connection between the act and the death. Baker v. State, 377 So.2d 17 (Fla. 1979). "Although no specific intent may be required, ... the State must still prove general intent, that is, that the defendant intended to do the act prohibited... ." State v. Oxx, 417 So.2d 287, 289 n. 2 (Fla. 5th DCA 1982). General intent is usually inferred from the act itself, but if a defendant puts the general intent in issue, the issue must go to the jury. Id. In the instant matter, appellant presented evidence that he was insane during the time period in question. A review of the case law in this area has not disclosed a single Florida decision holding that the defense of insanity does not apply to strict liability crimes. "It is axiomatic that a defendant is entitled to a jury instruction on the theory of his defense." Palmes v. State, 397 So.2d 648, 652 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). Accordingly, we hold that the trial court's *962 instruction that insanity is not a defense to DUI-manslaughter or DUI-property damage was error.
An error in jury instructions constitutes reversible error only "if there exists a reasonable possibility that the instruction contributed to the conviction." Pieczynski v. State, 516 So.2d 1048, 1049 (Fla. 3d DCA 1987). A review of the convictions in this case reveals that no reasonable possibility exists that the erroneous instruction contributed to appellant's conviction. In Count I, appellant was charged with second-degree murder. The judge instructed the jury that appellant's insanity defense applied to Count I. The jury found appellant guilty in Count I of the lesser included offense of manslaughter by culpable negligence. Therefore, appellant was found guilty of manslaughter even though appellant had the benefit of the insanity defense in Count I. Thus, it makes no difference that appellant did not have the benefit of the defense of insanity for Count II, DUI-manslaughter. This is especially true since appellant's DUI-manslaughter conviction is superfluous. See Houser v. State, 474 So.2d 1193 (Fla. 1985). Furthermore, there is no reasonable possibility that the trial court's instruction that insanity was not a defense to DUI-property damage offenses contributed to appellant's conviction for DUI-property damage.
The jury found appellant guilty of both manslaughter by culpable negligence and DUI-manslaughter. However, although appellant was neither orally adjudged guilty nor sentenced with respect to DUI-manslaughter, the trial court entered a written judgment adjudicating appellant guilty of both manslaughter by culpable negligence and DUI-manslaughter. "Only one homicide conviction and sentence may be imposed for a single death." Houser v. State, 474 So.2d 1193, 1196 (Fla. 1985). Accordingly, this case must be remanded for entry of an amended judgment and sentence adjudicating the appellant guilty of only one count of manslaughter. Thomas v. State, 380 So.2d 1299 (Fla. 4th DCA), rev. denied, 389 So.2d 1116 (Fla. 1980); Carr v. State, 338 So.2d 267 (Fla. 1st DCA 1976).
A total of 136 points were calculated on appellant's sentencing guidelines scoresheet resulting in a recommended range of seven-twelve years incarceration. The trial court imposed a sentence of twelve years in prison. The subtraction of even a single point places appellant in the next lower cell, with a recommended range of three-seven years. The trial court made errors regarding two calculations. First, a review of the scoresheet indicates that two points were scored under the portion of the scoresheet entitled "prior record" for a prior jaywalking conviction in Hawaii. In Florida, the offense of jaywalking is neither a felony nor a misdemeanor but is a noncriminal "infraction." Section 316.130, Fla. Stat. (1987); Section 318.13(3), Fla. Stat. (1987). Florida Rule of Criminal Procedure 3.701 d.5.(a)(5) states that "[c]onvictions which do not constitute violations of a parallel or analogous state criminal statute shall not be scored." Additionally, 21 points were erroneously assessed for "legal constraint." The term "legal status at time of offense" found on the sentencing guidelines scoresheet is defined as "[o]ffenders on parole, probation, or community control; in custody serving a sentence; escapees; fugitives who have fled to avoid prosecution or who have failed to appear for a criminal judicial proceeding or who have violated conditions of a supersedeas bond; and offenders in pretrial intervention or diversion programs." Fla.R.Crim.P. 3.701 d.6. Appellant had received a one-year suspended sentence in Hawaii. At the sentencing hearing, the prosecutor successfully persuaded the trial court that the one-year suspended sentence was analogous to probation or a pretrial diversion program. However, a suspended sentence is not the equivalent of parole, probation, community control or a pretrial intervention or diversion program. A deduction of the 21 points scored for "legal constraint" and the two points assessed for jaywalking results in a total of 113 points and a recommended sentencing range of three-seven years imprisonment. Accordingly, this case is remanded for resentencing consistent with this opinion.
*963 Finally, this case must be remanded to the trial court for the imposition of new terms of probation for Counts IV, V and VI. Appellant was convicted of the misdemeanors of DUI-property damage (Counts IV and V) and of leaving the scene of an accident involving property damage (Count VI). Section 948.04(1), Florida Statutes (1987) provides:
Defendants found guilty of misdemeanors who are placed on probation shall be under supervision not to exceed 6 months unless otherwise specified by the court. In relation to any offense other than a felony in which the use of alcohol is a significant factor, the period of probation may be up to one year.
However, the length of probation may not exceed the maximum term of imprisonment allowable by statute for the offense in question. Blackburn v. State, 468 So.2d 517, 518 (Fla. 1st DCA 1985). The maximum permissible sentence for a misdemeanor is one year. Therefore, the probationary terms imposed for Counts IV, V and VI are hereby vacated and the cause remanded to the trial court for the imposition of terms of probation not exceeding one year.
In conclusion, we find the trial court's admission of appellant's prior DUI arrest and the trial court's jury instruction that the defense of insanity was not applicable to DUI-manslaughter and DUI-property damage to be harmless error. Accordingly, we decline to reverse on these issues. However, we remand this case to the trial court for the following action: (1) entry of an amended judgment and sentence adjudicating appellant guilty of only one count of manslaughter, (2) resentencing within the recommended guidelines sentencing range of three-seven years, and (3) imposition of terms of probation not exceeding one year for Counts IV, V, and VI.
AFFIRMED in part, REVERSED in part, and REMANDED.
MILLS and JOANOS, JJ., concur.