538 So.2d 63 (1989)
Arthur Calvin LEE, Appellant,
v.
STATE of Florida, Appellee.
No. 87-96.
District Court of Appeal of Florida, Second District.
January 27, 1989.
James Marion Moorman, Public Defender and Paul C. Helm, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellee.
*64 RYDER, Acting Chief Judge.
Arthur Calvin Lee appeals from his conviction for first degree murder. We reverse and remand for a new trial.
Arthur and Gail Lee were married but separated. Mrs. Lee lived in Tampa with her eight-year-old son, Lavar, and was dating Emerson Williams. On the afternoon of January 7, 1986, Williams' Cadillac automobile was parked in Mrs. Lee's front yard when Mr. Lee arrived. After a brief confrontation between Mr. and Mrs. Lee inside the residence, Mrs. Lee ran out of the house and to her car in an effort to obtain a gun. Mr. Lee followed his wife to the vehicle and a scuffle for possession of the gun ensued. As the two fought to gain control of the firearm, a shot was fired shattering a window of the automobile. Thereafter, Mr. Lee wrestled the gun away from Mrs. Lee, who then ran into the house and locked the front door. After a brief conversation with Williams, who had retreated to the backyard, Mr. Lee returned to the front of the house, kicked open the front door and entered the house.
According to Lee's testimony at trial, during a physical confrontation in which he and his wife fell across a love seat struggling, Mrs. Lee kicked him in the knee causing him to fall backward and the gun to accidentally fire. However, Lavar, who was present when the shooting occurred, testified that after the kick in the knee Mr. Lee stepped back, aimed the gun at Mrs. Lee with both hands on the gun and shot at Mrs. Lee. Mrs. Lee sustained a gunshot wound to the head from which she died shortly thereafter. Expert testimony established that the gun was fired at a distance of about six inches from Mrs. Lee's head.
On cross-examination of Lee, the prosecutor asked him if he had cocked the hammer of the gun before it fired. Lee responded in the negative. In rebuttal, the prosecutor called a firearms expert from the Florida Department of Law Enforcement (FDLE) for testimony regarding the results of a trigger pull test the expert had performed while examining Mrs. Lee's gun. The results of the test revealed that the trigger pull was four and one-half pounds with the gun cocked and hammer back but was seventeen pounds when it was not so cocked. Defense counsel objected that he had not been notified that a trigger pull test had been performed and, further, that he had not received results from such a test. A proffer was made of the witness' testimony, during which it was revealed that the FDLE expert had not reported his trigger pull test findings either to the detective investigating the incident or to the state attorney, even though the test results were recorded in the expert's records at the time of testing and prior to trial. The trial court allowed the expert to testify before the jury without further inquiry.
During cross-examination of Lee, the prosecutor asked if he had ever told his wife that he would kill her if he saw Williams' Cadillac parked in the front yard of her house again. Prior to asking that question, the prosecutor interrupted his examination of Lee, walked to his counsel table, picked up a file and then, in asking the question, held up the file in a significant manner. After Lee answered in the negative, the prosecutor returned the file to the counsel table and then resumed cross-examination on other matters but never followed up on the question of a prior threat. Defense counsel moved for a mistrial on the grounds that the existence of a prior death threat had not been disclosed during discovery and was not otherwise made known to him. The prosecutor replied that he had been made aware of the death threat during trial, one day prior to his cross examination of Lee. At that time, a witness who had been named in the prosecution's pretrial witness list informed the state attorney's office that Lee had made the statement in question. Without addressing the fact that the state had knowledge of the statement a day before its use and failed to advise the defense of either its existence or its intended use and without addressing any other prejudice issue, the trial court denied the motion for mistrial, stating merely that the prosecutors could not inform defense counsel of the alleged death threat before they were made aware of it themselves.
*65 Reversal is required in this case because the trial judge failed to conduct a Richardson hearing with regard to both the trigger pull test and the alleged death threat. See Richardson v. State, 246 So.2d 771 (Fla. 1971). When the state violates a discovery rule, the trial court has discretion to determine whether the violation resulted in harm or prejudice to the defendant, but this discretion can be properly exercised only after adequate inquiry into all the surrounding circumstances. State v. Hall, 509 So.2d 1093 (Fla. 1987); Wilcox v. State, 367 So.2d 1020 (Fla. 1979). In making this inquiry, the trial judge must determine whether the state's discovery violation was inadvertent or willful, whether the violation was trivial or substantial, and, most importantly, what effect it had on the defendant's ability to prepare for trial. Hall; Wilcox. The burden is on the state to show the defendant was not prejudiced in the preparation of his defense. Cumbie v. State, 345 So.2d 1061 (Fla. 1977). A trial court's failure to conduct an adequate Richardson inquiry constitutes per se reversible error. Brown v. State, 515 So.2d 211 (Fla. 1987); Hall.
Here, the state's failure to inform appellant of the results of the trigger pull test until the time of the FDLE firearms expert's rebuttal testimony constitutes a violation of Florida Rule of Criminal Procedure 3.220. Rule 3.220(a)(1)(x) imposes an affirmative and continuing duty on the state to disclose reports or statements of experts, including the results of scientific tests or experiments. See Robinson v. State, 522 So.2d 869 (Fla. 2d DCA 1987); Raffone v. State, 483 So.2d 761 (Fla. 4th DCA), cause dismissed, 491 So.2d 281 (Fla. 1986). Although the firearms expert had not reported his trigger pull findings either to the police or to the state attorney, the state is charged with constructive knowledge and possession of evidence held by other departments of the executive branch of Florida's government for discovery purposes. See Antone v. State, 355 So.2d 777 (Fla. 1978); Robinson; State v. Alfonso, 478 So.2d 1119 (Fla. 4th DCA 1985), review denied, 491 So.2d 280 (Fla. 1986). Therefore, possession of the test results by the FDLE is imputed to the state attorney, who had a duty to disclose them prior to trial. In light of the state's discovery violation, the trial court erred in failing to conduct a Richardson hearing to determine whether appellant was procedurally prejudiced as a result of the violation.
The trial judge also erred by not inquiring further into the circumstances surrounding the prosecutor's questioning of appellant during cross-examination which suggested to the jury the existence of a prior death threat. The court did determine, after an objection to the question was made, that the state attorney was unaware of the alleged death threat until one day prior to the cross-examination of appellant. However, the state was under a continuing duty to disclose previously undisclosed evidence under Florida Rule of Criminal Procedure 3.220(f). Brown; Cumbie. When a first degree murder trial is in progress, the rule dictates immediate disclosure. Brown. Therefore, the state's failure to notify appellant of the existence of the alleged death threat the day before its cross-examination of him, when it became aware of the alleged statement, constitutes a violation of rule 3.220(f). The court's limited inquiry into the reasons for the state's failure to earlier notify appellant of the alleged death threat failed to address the crucial question under Richardson of whether the state's discovery violation procedurally prejudiced appellant. In fact, the question of prejudice to appellant was never entertained by the trial judge.
Because of the per se reversal rule under Richardson, we need not examine the record to determine whether procedural prejudice resulted from the introduction of the trigger pull test and the suggestion of a prior death threat. See Cumbie. In addition, the question of whether substantive prejudice occurred does not arise, since the purpose of a Richardson inquiry is to ferret out procedural, rather than substantive, prejudice. Wilcox, at 1023. We note, however, that the results of the trigger pull test may have undermined the credibility of appellant's testimony that the shooting *66 was accidental, since it may have appeared to the jury unlikely that an uncocked gun with a seventeen-pound trigger pull could fire accidentally. In addition, the prosecutor's suggestion that there was a prior death threat goes directly to the issue of premeditation, a factor the jury must consider in reaching its verdict. Had appellant known that the trigger pull test and the alleged prior death threat were to be injected into the trial, he might have prepared his defense differently. For example, he might have successfully suppressed the test results, impeached the witness who informed the state attorney of the alleged death threat or excluded the witness' testimony and any reference thereto. Without a Richardson inquiry, the trial court was in no position to make an accurate judgment as to these possibilities. See Wilcox at 1023.
Our reversal on the two Richardson issues raised by appellant makes consideration of a third point raised in his appeal unnecessary. We reverse and remand for a new trial on the first degree murder charge.
REVERSED AND REMANDED.
SCHOONOVER and FRANK, JJ., concur.