980 So.2d 1254 (2008)
Harold HEMPSTEAD, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-2064.
District Court of Appeal of Florida, Second District.
May 9, 2008.
*1255 Harold Hempstead, pro se.
Bill McCollum, Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Appellee.
SILBERMAN, Judge.
Harold Hempstead appeals the denial of his motion for postconviction relief after evidentiary hearing on three of the seventy-seven issues he raised in his motion filed pursuant to Florida Rule of Criminal Procedure 3.850. We reverse the summary denial of claims 9, 27 (with respect to count 38 of the charged crimes), and 64. The postconviction court must consider the motions for leave to supplement claims 9 and 64 on remand and allow Hempstead a *1256 reasonable time to file a facially sufficient claim on claim 27 with respect to count 38. We reverse the summary denial or dismissal of facially insufficient claims 26, 42, 45-47, 66, 72-74, and 76 and remand for the postconviction court to consider the motions for leave to supplement those claims. Finally, we reverse the denial of claim 77, regarding cumulative error, for the postconviction court to reconsider it after the court has resolved the remaining claims. As to the denial of the balance of the claims, we affirm without discussion.

FACTS
The State charged Hempstead with thirty-three counts of burglary of a dwelling, second-degree felonies; four counts of armed burglary, first-degree felonies; and one count of organized dealing in stolen property, a first-degree felony. The offenses allegedly occurred between September 30, 1998, and March 25, 1999.
A highlight of some of the trial testimony follows. The State presented the testimony of burglary victims and neighbors. The victims, for the most part, testified that their homes had been burglarized and described the property stolen and the property recovered from the police or from pawn shops. Some victims saw a faded, red car near the time of the burglaries, and a few testified that they saw the defendant outside their homes. For example, Mr. Cook (count 14) testified that he saw Hempstead peering in his window two to three weeks before the burglary, and Ms. Wilkins (count 22), identified Hempstead in court as the person she saw in her backyard on the day of her burglary and testified that he drove off in a faded, red car.
Fingerprint evidence linked Hempstead and his accomplice, Kaleb Stockwell, to some of the burglaries. Hempstead's fingerprint was found at the Sheridan residence (count 32) and on stolen property, a coin proof set. Stockwell's fingerprint was found at the Barrett residence (count 13) and the Ghianuly residence (count 17).
Officers located the red car on March 25, 1999, and saw Hempstead and Stockwell getting into the car. When the officers approached, Hempstead and Stockwell fled, but the officers ultimately arrested them. Hempstead directed Detective Schmidt to the Treasure Island Motel where a U-Haul was out front, and Hempstead's wife, Margaret Rich, was sitting outside a motel room in a patio area. When they went into the motel room, Hempstead indicated that a boom box in the room belonged to him. The officers discovered that the boom box was taken on the previous day in the Galambos burglary (count 5). When questioned about some of the recent burglaries, Hempstead stated that he remained outside while Stockwell committed certain of the burglaries.
The police recovered stolen property from Hempstead's Onyx Drive residence, the U-Haul, the motel room, a Citrus County trailer, and the red car. Approximately 100 items were recovered from the Onyx Drive residence. Pawn slips were introduced into evidence showing that Rich, Stockwell, and Wendy Hempstead, Hempstead's sister, pawned property stolen in the burglaries regarding counts 12-14, 16-17, 19-24, 26-28, and 30-33.
Kaleb Stockwell testified that he had committed about twenty burglaries at Hempstead's direction. Hempstead drove him to the burglaries in a red Dodge Shadow or Duster. Stockwell went on a "show and tell" with Detective Herron, and Stockwell pointed out houses he recognized. Stockwell testified to the burglaries in detail and stated that Hempstead went inside the homes during some of the burglaries. Stockwell testified that he was *1257 not involved at all in the burglaries committed in 1998 and that he had no personal knowledge of Hempstead being involved in burglaries in January of 1999. In addition, Stockwell testified that when he went on the "show and tell" with the police, he did not remember one residence, which was the Wilson residence, burglarized on March 23, 1999, and charged in count 9. Detective Herron testified that the first burglary that Stockwell believed he was involved in was the Wallace residence which occurred on March 8, 1999, and was charged in count 20. Stockwell did not testify regarding the earlier burglaries, which occurred from October 29, 1998, through March 2, 1999 (counts 22 through 36). Thus, Stockwell did not testify about the burglaries regarding counts 9 and 22-36.
Stockwell testified that he never kept any property from the burglaries and that Hempstead had given him all of the property that he had pawned. Stockwell saw Hempstead throw two bags of "stuff" underneath a trailer in Citrus County. Stockwell was charged with three burglaries and received a non-incarcerative sentence. He testified that he had no deals with the prosecution for testifying.
Margaret Rich, Hempstead's wife, testified that for all the pawn slips with her signature identified at trial, Hempstead had given her the property to pawn. Hempstead got the money for the property that she pawned. Hempstead rented the house on Onyx Drive. Rich testified that she rented a U-Haul but that it was not her idea to rent it. She testified that Hempstead was the primary user of the red car. She also testified that she did not make the decisions regarding pawning the property or spreading out the pawns. She was on two and one-half years' probation for failure to return a hired vehicle and grand theft auto regarding vehicles involved in this case. She testified that she received no deal or promises for her testimony.
The jury found Hempstead guilty of three counts of armed burglary (counts 4, 5, and 35), thirty-one counts of burglary (one as a lesser-include offense of armed burglary in count 1), one count of trespass (a lesser-included offense of count 15), and one count of organized dealing in stolen property (count 38). He was found not guilty of the burglaries in counts 34 and 37. The judgments and sentences reflect that Hempstead received thirty-year sentences on the armed burglary and organized dealing counts, fifteen-year sentences on the burglary counts, and time served on the trespass. The court ordered some counts to run consecutively and some to run concurrently, for what appears to be a total sentence of 165 years. On direct appeal this court issued a per curiam affirmance. Hempstead v. State, 821 So.2d 1066 (Fla. 2d DCA 2002) (table).
Hempstead timely filed a sworn motion for postconviction relief alleging seventy-seven claims. On November 24, 2004, the postconviction court rendered its Order Dismissing in Part, Denying in Part Motion for Postconviction Relief and Order to Show Cause. Hempstead filed motions for leave to supplement many of his claims after the postconviction court entered its original order. On appeal, Hempstead recognizes in his initial brief that his first motions for leave to supplement were filed without the required oath. He filed subsequent motions to supplement that contained the required oath. The postconviction court entered five more orders on Hempstead's motion and his numerous motions to supplement, culminating in the postconviction court's final order of March 22, 2006, that denied relief after an evidentiary hearing on three claims.

*1258 MOTIONS TO SUPPLEMENT
Hempstead contends that the postconviction court should have considered the merits of his motions for leave to supplement because they did not seek to add any new claims but only to supplement the claims already raised with additional information and case law. He argues that the postconviction court erred in construing the motions for leave to supplement as motions for rehearing and in determining that they were successive and untimely.
The State contends that amendments made to a motion after a ruling on the merits are considered improper, successive motions, and we agree. In Graham v. State, 846 So.2d 617, 618 (Fla. 2d DCA 2003), this court stated, "A timely-filed rule 3.850 motion, prior to the trial court's disposition of the motion, may be amended with sworn allegations relevant to the issue or issues raised in the motion, even after the two-year time period for filing a timely rule 3.850 motion has expired." Although a final order on the entire seventy-seven-claim motion had not yet been filed when Hempstead filed his motions to supplement, the postconviction court had denied many of the claims on the merits in the November 2004 order. To the extent that the postconviction court disposed of claims on the merits, any further supplements on those particular claims are successive. Otherwise, in this seventy-seven-claim motion in which the postconviction court held an evidentiary hearing on three claims, Hempstead's repeated filing of supplements on claims that had been determined on the merits would make it difficult for the case to ever be totally disposed of on all claims. Therefore, we agree that the postconviction court was not required to consider the motions to supplement the claims that had been summarily denied on the merits and affirm as to this issue.
With respect to various claims that were dismissed or denied as facially insufficient, however, the postconviction court should have stricken those claims with leave to amend within a reasonable time. See Spera v. State, 971 So.2d 754, 761 (Fla.2007). The Spera court stated that "when a defendant's initial rule 3.850 motion for postconviction relief is determined to be legally insufficient for failure to meet either the rule's or other pleading requirements, the trial court abuses its discretion when it fails to allow the defendant at least one opportunity to amend the motion." Id. The court pointed out that its decision was limited to facially insufficient motions and that "[w]hen trial courts deny relief because the record conclusively refutes the allegations, they need not permit the amendment of pleadings." Id. at 762. The court emphasized that its decision was designed to allow a defendant to amend pleadings if the defendant could, in good faith, correct the pleading deficiency. Id. We recognize that the postconviction court did not have the benefit of Spera when it entered its orders on Hempstead's claims. However, because Hempstead's case was in "the appellate `pipeline'" when Spera was issued, Spera applies here. See Pierre v. State, 973 So.2d 547, 547 (Fla. 5th DCA 2008). Under the unusual circumstances here, where Hempstead has chosen to file multiple, lengthy supplements on many claims, we reverse the following claims that were denied or dismissed as facially insufficient and remand for the postconviction court to consider the supplements that Hempstead has already filed on these claims: 26, 42, and 45 (filed March 6, 2006); 46 (mislabeled as 9) (filed February 9, 2006); 47 and 66 (filed December 28, 2005); 72-74 (filed December 28, 2005); and 76 (filed March 14, 2006).
In addition, with respect to the supplement to claims 72-74, the State contended that the original motion to supplement, filed January 4, 2005, was facially insufficient *1259 and should be dismissed because it failed to contain an oath as required when making factual allegations. On September 9, 2005, the postconviction court rendered an order denying the motion to supplement grounds 72-74 and stated that the supplement failed to comport with rule 3.850 and 3.987 after the court permitted "leave to file such to cure" the facial deficiencies. The court stated the claims were forever barred and denied the motion to supplement filed January 4, 2005, with prejudice. On December 28, 2005, Hempstead filed a second motion to supplement claims 72-74 that contained an oath. The final order rendered March 22, 2006, does not appear to address this supplement.
Hempstead was not permitted leave to cure the facial deficiency of the lack of an oath in his January 4, 2005, motion to supplement. He had previously filed his sworn original motion on the claims, which the court denied for facial insufficiency, finding the claims vague and nonspecific. Thereafter, he filed the motion to supplement without an oath. The court then denied the claims with prejudice. The proper remedy for the omission of an oath is a dismissal without prejudice. Patton v. State, 784 So.2d 380, 389 (Fla.2000); Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993); Lewis v. State, 638 So.2d 97, 98 (Fla. 2d DCA 1994). Thus, the postconviction court erred in denying claims 72-74 with prejudice. We reverse the denial of these claims with prejudice and, as stated above, direct the postconviction court to consider Hempstead's second motion to supplement claims 72-74, filed on December 28, 2005.
CLAIM 9: INEFFECTIVE ASSISTANCE FOR FAILURE TO EFFECTIVELY PRESENT WITNESSES AND ARGUMENT ON MOTION FOR SEVERANCE
In claim 9, Hempstead contends that counsel was ineffective in litigating the motion to sever the thirty-eight counts for trial. The postconviction court's order on this claim does not fully address the points Hempstead raises and relies on the State's Reply to Motion for New Trial to refute the claim. The court's order and attachments do not conclusively refute the claim.
To prove ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove prejudice, the defendant must establish that there is a reasonable probability that the result of the proceeding would have been different without the deficient performance. Id. at 694, 104 S.Ct. 2052.
Hempstead claims that counsel filed a basic, one-page motion to sever that cited no detailed facts or case authority and that counsel did not request a hearing to argue detailed facts. He further argues that counsel failed to file a response to the State's memorandum of law regarding severance. Counsel apparently raised the issue in his motion for new trial because the State addressed the issue in its reply to the motion. The postconviction court did not attach the motion to sever, the State's memorandum of law, or Hempstead's motion for new trial to its order denying the claim.
Hempstead asserts that counsel failed to call witnesses as to the motion to sever, and the postconviction court addressed this by stating as follows:
He states that counsel should have called various public works officials to testify to the topography of St. Petersburg, Florida to show that since seventy-five *1260 percent of the city's residential areas have fences and alleyways, that burglaries of such places are not so strikingly similar. Even had counsel presented this evidence, Defendant cannot show that there is a reasonable probability that the Court would have granted Defendant's motion to sever the counts for purposes of trial. Defendant was charged with being a principal (and on occasion actually participating) in 36[37] counts of burglary to which his co-defendant testified that defendant masterminded and directed the burglary/stolen property ring. Defendant was connected to the burglaries based on witness sightings of his red car at the scene and partial identification, his wife's pawning of several items taken from the burglarized residences at his direction, and recovery of the items in his car, as well as vehicles and other storage units rented in his wife's name. See Exhibit C: State's reply to Defendant's Motion for New Trial. This claim is denied.
The court did not specifically address Hempstead's argument and case law that the thirty-seven alleged counts of burglary were not similar enough to come in as Williams[1] rule evidence. Hempstead alleged that the facts show that thirty-seven burglaries were committed on twenty-one different days over an approximate six-month period in police districts two and three which make up half of St. Petersburg. He notes that the State contended that the burglaries were similar because most of the houses had privacy fences and backed up to alleys. He relies on cases such as Buenoano v. State, 527 So.2d 194, 197 (Fla.1988), in which the court stated as follows:
Because of the potential for prejudice to the defendant's case, evidence of collateral crimes will not be admitted solely on the basis of mere similarity between the crime charged and the collateral crimes. For collateral crimes to be admissible there must be something so unique or particularly unusual about the perpetrator or his modus operandi that introduction of the collateral crimes evidence would tend to establish that he committed the crime charged.
Hempstead also points out dissimilarities among the burglaries. For instance, some entries were by the front door, some by a side door, and some by the rear door. He contends that almost half of the homes did not back up to an alley. He also points out that the victims were different in the thirty-seven counts (except counts 11 and 37 had the same victim and Hempstead was acquitted of count 37).
However, the question of whether the evidence could have come in as Williams rule evidence is not the primary issue. The fact that evidence could have come in under the Williams rule has been discussed as part of a harmless error analysis in a case involving the denial of a defendant's motion to sever. See Crossley v. State, 596 So.2d 447, 450 (Fla.1992). Furthermore, the First District has recognized that different inquires are involved regarding severance and similar fact evidence. See Beal v. State, 620 So.2d 1015, 1018 (Fla. 1st DCA 1993) (explaining that "[w]hile the results of these inquires may be the same in a given case," the admissibility of Williams Rule evidence includes "a weighing of the probative value of the evidence against its prejudicial effect and requires that the similar fact evidence not become the feature of the trial").
Most important is that Hempstead contends that the burglaries did not qualify for joinder or consolidation under Florida *1261 Rules of Criminal Procedure 3.150 or 3.151 and that severance was required under rule 3.152. For the joinder of criminal offenses to be warranted, the offenses must be "based on the same act or transaction or on 2 or more connected acts or transactions." Fla. R.Crim. P. 3.150(a).
Hempstead alleges that prior to trial the State had argued that the burglaries constitute the "stolen" part of count 38, organized dealing in stolen property, and that the same witnesses that would be necessary on the thirty-seven burglary counts would also be necessary for the organized dealing offense. See § 812.019(2), Fla. Stat. (1997) ("Any person who initiates, organizes, plans, finances, directs, manages, or supervises the theft of property and traffics in such stolen property shall be guilty of a felony of the first degree. . . ."). Hempstead argues that the State's "contention is without merit because the burglaries show that the defendant allegedly had contact with the `stolen property,' and if he did, he couldn't legally be convicted" for organized dealing in stolen property, citing Goddard v. State, 458 So.2d 230 (Fla.1984), and Burrell v. State, 601 So.2d 628 (Fla. 2d DCA 1992).
In Goddard, the supreme court determined that "the `remedial goal' of section 819.019(2) is to discourage organized theft by imposing a harsher penalty on the individual who actually organizes thefts and traffics in stolen goods than on the common thief who simply steals and then sells those goods." 458 So.2d at 234. Therefore, the statute would apply to "`white collar' fences who often escape punishment because they never come into contact with stolen goods." Id. at 233. In Burrell, this court determined, relying upon Goddard, that a person who had contact with the stolen property could not be convicted under section 819.019(2). 601 So.2d at 629. This court stated that the proper charge when a person has had direct contact with the property is dealing in stolen property under section 819.019(1). Id.; see also § 819.019(1) ("Any person who traffics in, or endeavors to traffic in, property that he or she knows or should know was stolen shall be guilty of a felony of the second degree. . . . ").
The postconviction court did not appear to consider this point in summarily denying the claim. It also did not appear to consider the case law cited on severance. In Jackson v. State, 539 So.2d 491 (Fla. 2d DCA 1989), which Hempstead cites, Jackson challenged his judgment and sentences for ten counts of robbery, two counts of grand theft, and a RICO count. This court determined that the trial court erred in denying the motion to sever and reversed and remanded for separate trials on the unrelated charges. Id. at 492. This court recognized that "consolidation is improper when `based on similar but separate episodes, separated in time, which are connected only by similar circumstances and the accused's alleged guilt in both or all instances.'" Id. at 491-92 (quoting Paul v. State, 385 So.2d 1371, 1372 (Fla.1980)). The robberies in Jackson occurred between November 10, 1985, and January 12, 1986, on different days at primarily fast-food restaurants and convenience stores. The court noted that the offenses were similar in that two masked men who fit the same general description by the victims committed the crimes, but that the connection was insufficient to try the robberies together. Id.
In Hoxter v. State, 553 So.2d 785 (Fla. 1st DCA 1989), the State argued that the trial court properly denied severance of five grand theft counts because the offenses "were temporally and geographically connected, and that the nature of the offenses and manner in which they were committed were identical in that the home-owners *1262 were cheated out of their property by the exact same scheme." Id. at 786. The First District stated that the offenses, which occurred over an eight-month period on different dates and involved separate victims, "were unrelated in the episodic sense and, therefore, joinder was improper." Id.
In Holley v. State, 564 So.2d 595 (Fla. 2d DCA 1990), the defendant challenged a RICO conviction and twelve robbery with a deadly weapon convictions for robberies of convenience stores and fast food restaurants. This court vacated the RICO conviction because the defendant acted alone and did not use a business organization to commit the offenses. Id. at 596. This court determined that the trial court erred in denying the motion to sever the robbery counts because the counts merely involved similar circumstances. Id.
Hempstead also cited to Crossley, 596 So.2d 447. There, the supreme court explained that "practicality and efficiency cannot outweigh the defendant's right to a fair trial. The danger in improper consolidation lies in the fact that evidence relating to each of the crimes may have the effect of bolstering the proof of the other." Id. at 450 (citation omitted). Hempstead contends that he was prejudiced by counsel's ineffectiveness in litigating the motion to sever because he was denied a fair trial by the failure to sever the counts and the result of the proceedings would have been different had the counts been severed.
In denying Hempstead's claim, the postconviction court relied upon the State's Reply to Motion for New Trial which cited two cases on the severance issue, Davis v. State, 670 So.2d 1036 (Fla. 2d DCA 1996), and Solomon v. State, 596 So.2d 789 (Fla. 3d DCA 1992). The State argued that the burglaries were "part of the same episodic crime spree occurring within the same area. The work of the St. Petersburg Police department was a single ongoing investigation, with leads based on the entire burglary and property disposal system that the defendant employed."
In Solomon the Third District determined that the trial court did not abuse its discretion in the denial of a motion to sever two counts. A sale of cocaine within 1000 feet of a school occurred on February 2, 1991, when Solomon sold cocaine to an undercover officer, and Solomon went to get more cocaine from an apartment. When the officer obtained a search warrant and entered the apartment on February 7, 1991, Solomon was in possession of cocaine, and he was charged with possession of cocaine with intent to sell. The court stated that both "crimes occurred during the course of an ongoing investigation." Id. at 791. In addition, they were "episodically connected" when the apartment was used to store the drugs from both counts and the officer obtained the search warrant for the apartment based on Solomon's sale of cocaine to him five days earlier. Id.
In Davis this court affirmed the denial of a motion to sever Davis's drug charges from the charges of his co-defendants because the offenses were episodic. This court did not detail the charges but stated that they "occurred in the same geographic area during the same limited period of time and were part of an ongoing investigation." 670 So.2d at 1037.
The State also argued in its Reply to the Motion for New Trial that to prove organized trafficking it had to establish that Hempstead "directed an ongoing enterprise to profit and dispose of the property from the burglaries and that the property was stolen." See Lugo v. State, 845 So.2d 74, 94 (Fla.2003) (explaining that racketeering charges linked "criminal incidents which might appear upon initial inspection to be temporally unrelated because they *1263 occurred within a six-month span"). However, the postconviction court did not address this argument in light of Hempstead's assertion that he cannot legally be convicted of organized dealing under Goddard and Burrell.
Because the postconviction court did not adequately address claim 9 and the court's order and attachments do not conclusively refute the claim, we reverse and remand the summary denial of this claim for further proceedings. See House v. State, 869 So.2d 1229, 1229 (Fla. 2d DCA 2004) (remanding for further proceedings when the postconviction court mentioned an issue but then failed to address it in its order summarily denying a rule 3.850 motion). Because we are reversing the summary denial of this claim, we also direct that the postconviction court consider Hempstead's motion for leave to supplement claim 9 (mislabeled as claim 46), filed on February 9, 2006.
CLAIM 27 (WITH RESPECT TO COUNT 38): INEFFECTIVE ASSISTANCE FOR FAILURE TO MAKE MOTION FOR JUDGMENT OF ACQUITTAL
We affirm the denial of claim 27 except as it relates to count 38. Hempstead contended in claim 27 that counsel was ineffective in failing to file a motion for judgment of acquittal on counts 9, 10, 19, and 22-38 because the essential elements of those crimes were not established. In the November 2004 order the postconviction court properly determined that the claim was facially insufficient because Hempstead failed to allege what argument counsel should have advanced to establish that the State failed to meet it burden of proof. The postconviction court went on to deny the claim on the merits, stating that the evidence was sufficient based on its reasoning in claims 2 and 8. However, the postconviction court did not address count 38, the organized dealing in stolen property charge, in this claim or in claims 2 and 8.
As discussed above on claim 9 (the motion to sever), case law indicates that an organized dealing in stolen property charge only applies to a defendant who had no actual contact with the property. See Goddard, 458 So.2d at 233-34; Burrell v. State, 601 So.2d at 629. Because the postconviction court denied the claim regarding count 38 without addressing it, we reverse the summary denial of the portion of claim 27 dealing with count 38 and direct the postconviction court on remand to allow Hempstead a reasonable time to amend to state a facially sufficient claim. See Spera v. State, 971 So.2d 754 (Fla. 2007). In all other respects we affirm the summary denial of claim 27.

CLAIM 64: BRADY VIOLATION REGARDING RICH'S ARREST STATEMENT
In claim 64 Hempstead contends that the State failed to provide Margaret Rich's arrest statement, made March 25, 1999, to the defense. We reverse the summary denial of this claim. Hempstead contends that he met the three-prong Brady[2] test enunciated in Strickler v. Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), and that the court should have granted an evidentiary hearing on the claim. "To establish a Brady violation, the defendant has the burden to show (1) that favorable evidence  either exculpatory or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3) because the evidence was material, the defendant was prejudiced." Riechmann v. State, 966 So.2d 298, 307 (Fla.2007) (citing Strickler, 527 U.S. at 281-82, 119 S.Ct. *1264 1936). To show prejudice or materiality for a Brady violation, "a defendant must demonstrate a `reasonable probability that the jury verdict would have been different had the suppressed information been used at trial.'" Id. (quoting Ponticelli v. State, 941 So.2d 1073, 1084 (Fla.2006)). "In other words, the question is whether `the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. (quoting Ponticelli, 941 So.2d at 1084). "In reviewing the materiality of an alleged Brady violation and whether prejudice ensued, `[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" State v. Huggins, 788 So.2d 238, 243 (Fla.2001) (quoting Strickler, 527 U.S. at 289-90, 119 S.Ct. 1936).
Hempstead alleged in his motion that he was advised after trial of the contents of Rich's arrest statements. He also alleged that counsel filed a demand for discovery prior to trial and that the State turned over the alleged arrest statements of everyone involved except Rich. He further alleged that the defendant requested a copy of Rich's arrest statement at various hearings, and that despite these requests, the State never provided the defense with Rich's arrest statement.
Hempstead alleged that Rich made the following statements to law enforcement when she was arrested:
(1) that she never received any stolen property/property that she pawned from the defendant; (2) that the defendant cut lawns and detailed cars for a living; (3) that the defendant doesn't drive (vehicles); (4) that she had no knowledge of the defendant's association with any burglaries; (5) that the U-Haul located at the Treasure Island motel was Kaleb Stockwell's; (6) that Kaleb Stockwell had sold and/or gave her some property, but she didn't know where he got it from; and (7) various other things.
He alleged that Rich "was if not the first, the second chief prosecution witness." He further alleged that her arrest statement was exculpatory and could have been used to impeach her because at trial she "alleged the opposite of everything she told law enforcement on the day of her arrest." He asserts that if he had the statement, prosecution would not have been instituted on count 38 and several other counts; that investigation into her statement would have revealed exculpatory evidence; and that the statement "could have been used in proving the defendant's innocence/establishing a defense."
In summarily denying the claim, the postconviction court stated as follows:
Defendant does not specify how or when he learned of the alleged existence of Ms. Rich's written arrest statement of March 25, 1999. Notwithstanding these deficiencies, Defendant cannot show how he was prejudiced, that there is a reasonable probability that had counsel introduced this impeachment material on cross-examination of Ms. Rich that the trial's outcome would be different. Kaleb Stockwell testified that he conducted pawns and burglaries at Defendant's instruction. See trial transcript, pp. 1028-1043. Even if Ms. Rich's testimony were successfully impeached, her testimony would only be cumulative to Mr. Stockwell's. This claim is denied.
Thus, the court denied the claim on the merits on the basis that Hempstead could not show prejudice, citing to Stockwell's testimony and determining that Rich's testimony was only cumulative. The court's *1265 order and attachments do not support this conclusion.
First, the test of prejudice is "`whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Huggins, 788 So.2d at 243 (quoting Maharaj v. State, 778 So.2d 944, 953 (Fla.2000)). Second, Rich's testimony is not cumulative to Stockwell's. In the cited trial transcript pages 1028-1043, Stockwell did testify that he conducted pawns and burglaries at Hempstead's instruction. However, the first burglary that Stockwell committed at Hempstead's direction was the Wallace burglary on March 8, 1999, which was charged in count 20. Thus, Stockwell did not testify regarding the earlier burglaries, which occurred from October 29, 1998, through March 2, 1999 (counts 22 through 36). In addition, Stockwell testified that when he went on the "show and tell" with the police, he did not remember one residence, which was the Wilson residence, burglarized on March 23, 1999, and charged in count 9. Thus, Stockwell did not testify regarding the burglaries in counts 9 and 22-36. Pawn slips with his signature were introduced regarding property stolen in counts 20, 22, 23, 26, 27, and 33. Pawn slips with Rich's signature were introduced regarding property stolen in counts 12, 14, 16, 17, 19-21, 24, 26-28, and 30-33. Therefore, Rich's testimony regarding pawning property that Hempstead gave her with respect to counts 24, 28, and 30-32 would not be cumulative.
Furthermore, Hempstead alleges that in the arrest statement Rich stated that the U-Haul at the Treasure Island motel was Stockwell's and that Stockwell had given her property to pawn. Stolen property was found in that U-Haul from counts 4, 5, 7, and 8-10. Thus, even to the extent that Rich's testimony may have been cumulative to Stockwell's or corroborated Stockwell's testimony, if the defense could have impeached Rich with her statements that implicated Stockwell, that would call into question Stockwell's testimony, a witness who admitted to committing many burglaries at Hempstead's direction. Both Rich's and Stockwell's credibility were key to the prosecution. If Rich actually made the statements that Hempstead alleges, they certainly could be used to impeach her, a key witness, and to cause doubt as to the credibility of Stockwell, the chief prosecution witness.
Thus, the postconviction court's order and attachments do not establish that Hempstead could not show prejudice on claim 64, which was the basis for the denial of the claim. We reverse the summary denial of claim 64 and remand for the postconviction court to reconsider the claim and the motion to supplement filed on December 28, 2005. If the court is unable to attach record documents that conclusively refute the claim, the court must hold an evidentiary hearing on the claim. See Chouquer v. State, 950 So.2d 1276, 1277 (Fla. 2d DCA 2007) (reversing summary denial of claim for evidentiary hearing, "unless the court is able to attach portions of the record that conclusively refute" the claim).

CLAIM 77: CUMULATIVE ERROR
The postconviction court reserved ruling on claim 77, alleging cumulative error, until after the evidentiary hearing and then denied the claim because the court found that there were no valid claims. Based on our reversal and remand on some of the claims, we reverse the denial of this claim and remand for the postconviction court to consider it after the court has resolved the remaining claims.

*1266 CONCLUSION
We reverse the summary denial of claim 9 (motion to sever), claim 27 (failure to file a motion for judgment of acquittal with respect to count 38, organized dealing in stolen property), and claim 64 (Brady violation regarding Rich's arrest statement). The postconviction court should consider the motions to supplement claims 9 and 64 on remand and allow Hempstead a reasonable time to file a facially sufficient claim on claim 27 with respect to count 38. We reverse the summary denial or dismissal of facially insufficient claims 26, 42, 45-47, 66, 72-74, and 76 and remand for the postconviction court to consider the motions for leave to supplement those claims. We reverse the denial of claim 77, cumulative error, for the postconviction court to reconsider it after the court has resolved the remaining claims. If, on remand, the postconviction court summarily denies relief on any claim, the court must attach record documents that conclusively refute that claim; otherwise, the court must conduct an evidentiary hearing on the claim. See Robinson v. State, 956 So.2d 1219, 1220 (Fla. 2d DCA 2007). In all other respects we affirm the denial of postconviction relief.
Affirmed in part, reversed in part, and remanded.
FULMER and WHATLEY, JJ., Concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).