HAZOURI, J.
 

 Kevin Nicholson appeals from his conviction and sentence for first-degree murder. He argues that the trial court erred when it allowed the state to present improper Williams
 
 [1]
 
 rule testimony at his trial. Nicholson also argues that the trial court erred in denying his motion for judgment of acquittal because the state’s case consisted of circumstantial evidence which was insufficient to support the conviction. We affirm on both points and write only to discuss Nicholson’s assertion that the trial court erred by allowing improper evidence of an uncharged collateral crime.
 

 Nicholson was indicted for the first-degree murder of his ex-wife, Lorrie Tennant Nicholson, which occurred on August 26, 2004.
 

 The state filed its Notice of Intent to Offer Evidence of Other Crimes or Acts along with its Motion for Permission to Introduce Collateral Crime Evidence to which the defendant objected. The acts the state wished to offer into evidence against Nicholson were:
 

 A/ That on February 9, 2003 police were called to 6710 Forrest Street (the same address at which the homicide in the instant cause occurred) in Hollywood, Florida reference a domestic dispute between Lorrie Tennant Nicholson and Kevin Nicholson. Also present was one Andrew Adderly.
 

 B/ That in sworn testimony Andrew Adderly stated that in February of 2003, he was involved in a sexual relationship with Lorrie Tennant Nicholson. Ms Ni
 
 *144
 
 cholson’s marriage had not yet been terminated by divorce. However, Kevin Nicholson and Lorrie were living separate and apart at the time. Indeed the divorce proceedings were commenced in 2003.
 

 C/ That Mr. Adderly told the police under oath that on February 9, 2003, he and Lorrie were in the master bedroom. Lorrie was asleep when at 4:00 am Mr. Adderly heard a noise emanating from a bathroom. He proceeded to the bathroom and observed a man cutting the screen. Adderly grabbed the cutters, went to Lorrie and advised her of what was happening and instructed her to call the police. Adderly returned to the bathroom and discovered that the intruder was halfway inside of the house by way of the bathroom window. Ad-derly pulled the intruder inside further and threw him into the bathtub. Upon looking at the intruder, he realized that it was Kevin Nicholson. Nicholson proceeding [sic] to exclaim that Lorrie was a “whore” and that the two were “fucking”. Nicholson then went straight to the bedroom where Lome was located. Nicholson pushed her back onto the bed, spread her legs and reached and touched her vaginal area with his right hand and then smelled his hand. Ad-derly grabbed Nicholson to liberate Lorrie. Nicholson began to argue about Adderly’s presence, their sexual activity and Adderly’s sleeping with Lorrie instead of in the guest room.
 

 According to the medical examiner, the victim was killed between 10 p.m. and 3 a.m. The death was caused by eight stab wounds inflicted with a knife. The victim was found with her nightgown up. There were no defensive wounds and no trauma to the arms, legs, or genital area. No items were taken from the house, including $690 which was in the decedent’s wallet on the nightstand.
 

 Crime scene investigators photographed the scene, lifted prints, and took other evidence, such as swabs of blood. There were numerous latent prints taken from inside the house and bedroom where the murder occurred. None of these latent prints matched the defendant. A knife sheath was found in the bedroom and, although there were no prints on the knife sheath, a forensic expert testified that from the partial profile of DNA that was contained on the knife sheath, there was a one in ten probability that the knife sheath belonged to the defendant. The knife, alleged to have been the murder weapon, was not recovered. The investigators did, however, discover a broken window in the bedroom with a hole in the screen. Blood was found outside the broken window. A patent palm print on the window sill was identified as belonging to the defendant. The palm print overlay blood which was determined to be the blood of a female. Additionally, the palm print was an exit print, as it pointed outward.
 

 The state called Andrew Adderly as a collateral crime witness. Adderly testified that he was sleeping at Lome’s house on February 8, 2003, and that in the early morning hours of February 9 he heard a noise in the bathroom. He got up and went to investigate. He then saw a man halfway through the bathroom window. The unidentified man was using a box-cutter to cut through the screen of the window. Adderly grabbed him and pulled him through the window and discovered that it was the defendant. Adderly further testified that the defendant left the bathroom, went into Lome’s bedroom, spread her legs, lifted her nightshirt, put his hand into her vagina, smelled his hand, and accused her of having sex with Adderly. Adderly testified that the defendant was very upset with Lorrie and said
 
 *145
 
 “you’re a whore, I know you’re fucking him. You’re a whore. Why’s he in my house.” Adderly called the police and the incident report was filed, although there were no criminal charges.
 

 The state asserts that this evidence is relevant to establish motive and intent for the homicide.
 

 At the hearing on the state’s motion, the state showed the similarity between the actions of the defendant on February 9, 2003, and the circumstances of the homicide. The victim was the same and she was found in a similar position, spreadeagled with no foreign DNA, and the perpetrator used the window to enter and exit the bedroom. In addition to the argument that this was a collateral crime, the state argued in addition to motive and intent, that the events of February 9, 2003 were inexplicably intertwined with the homicide and were probative of identity and opportunity.
 

 The defense argued that the evidence was not relevant, and that placing a finger in the vaginal area was not sufficiently similar to killing someone with a knife. The trial court granted the state’s motion, finding that the evidence was relevant and not outweighed by undue prejudice.
 

 The standard of review for admission of evidence is abuse of discretion; but that discretion is limited by the rules of evidence.
 
 Nardone v. State,
 
 798 So.2d 870, 874 (Fla. 4th DCA 2001). The
 
 Williams
 
 rule has been codified in section 90.404(2)(a), Florida Statutes, which provides:
 

 (a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
 

 Although there are several similarities between the events of February 9, 2003, described by Adderly, they are insufficient to warrant introduction of the collateral crime prior bad acts for the purposes of identity. Nor do we find the incident of February 9, 2003, inextricably intertwined with the events of the night of Lorrie Nicholson’s unfortunate death. However, similarity is not required if relevant to motive or intent.
 

 As the Supreme Court of Florida notes: “Evidence of ‘other crimes’ is not limited to other crimes with similar facts. So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy. This does not bar the introduction of evidence of other crimes which are factually dissimilar to the charged crime if the evidence of other crimes is relevant.”
 

 Sexton v. State,
 
 697 So.2d 833, 836-37 (Fla.1997) (quoting
 
 Bryan v. State,
 
 533 So.2d 744, 746 (Fla.1988)).
 

 In
 
 Dennis v. State,
 
 817 So.2d 741 (Fla.2002), which relies on
 
 Sexton,
 
 the defendant was convicted of the first-degree murder of a young woman with whom he had a stormy relationship. The defendant argued that the trial court erred in admitting collateral evidence that he stalked, threatened, and assaulted the victim. He argued that this evidence was not relevant to demonstrate motive or intent, and should have been excluded on the grounds of unfair prejudice, as it demonstrated only propensity.
 

 The evidence the defendant complained of came from several of the victim’s family
 
 *146
 
 members and friends who recounted incidents in which the defendant would stalk the victim. Particularly, the victim’s uncle described one incident in which the defendant, while aiming a gun at both of them, threatened to kill him and the victim. In sum, the evidence depicted the turbulent and sometimes violent relationship between the defendant and the victim.
 

 The court in
 
 Dennis
 
 stated that “ ‘evidence of bad acts or crimes is admissible without regard to whether it is similar fact evidence if it is relevant to establish a material issue.’ ” 817 So.2d at 762 (quoting
 
 Pittman v. State,
 
 646 So.2d 167, 170 (Fla.1994)). Then, it again cited
 
 Sexton,
 
 stating that “ ‘[a] trial court has broad discretion in determining the relevance of evidence and such a determination will not be disturbed absent an abuse of discretion.’ ”
 
 Dennis,
 
 817 So.2d at 762 (quoting
 
 Sexton,
 
 697 So.2d at 837).
 

 Noting that the evidence against the defendant in
 
 Dennis
 
 was certainly prejudicial, the supreme court held that
 

 the evidence of the nature of [the defendant’s] relationship with the victim was relevant to establish [the defendant’s] motive.
 
 See Burgal v. State,
 
 740 So.2d 82, 83 (Fla. 3d DCA 1999) (holding prior incidents of domestic violence by the defendant against the victim were properly admitted to prove motive, intent, and premeditation in prosecution for attempted first-degree murder);
 
 Brown v. State,
 
 611 So.2d 540, 542 (Fla. 3d DCA 1992) (holding that evidence that the defendant had a rocky relationship with the victim and had threatened to kill her if he caught her with another man was relevant to establish motive in a prosecution for battery and attempted second-degree murder).
 

 Dennis,
 
 817 So.2d at 762.
 

 Accordingly, based upon the supreme court’s decision in
 
 Dennis,
 
 and the cases cited therein, we conclude that the events of February 9, 2003, although consisting of prior bad acts, were admissible as relevant to prove motive and intent. We also note that the prior bad acts were not made a feature of the trial. Therefore, the trial court did not err in admitting prior bad act evidence and we affirm the conviction.
 

 Affirmed.
 

 POLEN and CIKLIN, JJ., concur.
 

 [1]
 

 .
 
 Williams v. State,
 
 110 So.2d 654 (Fla.1959).